Robert TWITCHELL, Jayne Ackerman Rogers, et al., Appellants,

v.

UNITED STATES of America, Appellee.

No. 17742.

United States Court of Appeals Ninth Circuit.

Feb. 4, 1963.

Rehearing Denied March 8, 1963.

Joseph S. Kane, Seattle, Wash., for appellants Jayne Ackerman Rogers and Harrison Rogers.

Clay Nixon, Seattle, Wash., for appellant Twitchell.

Betty Taylor Howard, Seattle, Wash., for appellant Conklin.

Brockman Adams, U. S. Atty., and Thomas H. S. Brucker, Asst. U. S. Atty., Seattle, Wash., for the United States.

Before HAMLEY and DUNIWAY, Circuit Judges, and TAYLOR, District Judge.

DUNIWAY, Circuit Judge.

In this criminal case, the appeals are by Robert Twitchell, Margaret Elinor Conklin, Jayne Ackerman Rogers (Mrs. Rogers), and Harrison Rogers (Mr. Rogers). They were tried under a nine count indictment, in which Max Kosher and

Dale Ratcliff were also named as defendants. Kosher and Ratcliff were not tried.

Count I charged all of the named defendants, together with Gloria Ashen, Gustave Meyers, Calvin Kellar, Norman Winslow, Vivian Hendricks, and others unknown, with a conspiracy (18 U.S.C. § 371) to violate sections 2421,[1] and 2422[2] (the Mann Act) as principals (see section 2(a) and (b))[3] of Title 18. The gist of the charge is a conspiracy to violate the Mann Act by: a. transporting or causing to be transported a woman or women in interstate commerce for immoral purposes (§ 2421, first paragraph, and § 2(b)), b. procuring and obtaining and causing to be procured and obtained a ticket or tickets to be used by a woman or women in interstate commerce for immoral purposes (§ 2421, second paragraph, and § 2(b)), and c. persuading, etc., a woman or women to travel in interstate commerce and causing her or them to use a common carrier for immoral purposes (§

2422). All four of the appealing defendants were found guilty under this count.

Counts II and III charge Mrs. Rogers with two substantive offenses, transporting and aiding, abetting, counselling or inducing the transporting of two different women (Gowans and Addington) from Portland, Oregon to Snohomish County, Washington, for immoral purposes (§ 2421, first paragraph, and § 2(a)). She was found guilty on both counts.

Count IV charged Mrs. Rogers and Dale Ratcliff with a similar offense, involving one Parker. Mrs. Rogers was found guilty on this count.

Count V charged Mr. and Mrs. Rogers and Conklin with a similar offense, involving one Balduyck. The count was dismissed as to the Rogers, and Conklin was found not guilty. Count VI, a similar count against the Rogers, involving one Ryan, was also dismissed.

Count VII charged the two Rogers with transporting Ryan from Portland to Sno-

1. "Whoever knowingly transports in interstate or foreign commerce, or in the District of Columbia or in any Territory or Possession of the United States, any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice; or

"Whoever knowingly procures or obtains any ticket or tickets, or any form of transportation or evidence of the right thereto, to be used by any woman or girl in interstate or foreign commerce, or in the District of Columbia or any Territory or Possession of the United States, in going to any place for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent or purpose on the part of such person to induce, entice, or compel her to give herself up to the practice of prostitution, or to give herself up to debauchery, or any other immoral practice, whereby any such woman or girl shall be transported in interstate or foreign commerce, or in the District of Columbia or any Territory or Possession of the United States—

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

2. "Whoever knowingly persuades, induces, entices, or coerces any woman or girl to go from one place to another in interstate or foreign commerce, or in the District of Columbia or in any Territory or Possession of the United States, for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose on the part of such person that such woman or girl shall engage in the practice of prostitution or debauchery, or any other immoral practice, whether with or without her consent, and thereby knowingly causes such woman or girl to go and to be carried or transported as a passenger upon the line or route of any common carrier or carriers in interstate or foreign commerce, or in the District of Columbia or in any Territory or Possession of the United States, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

3. "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

homish County (§ 2421, first paragraph). They were both found guilty.

Count VIII charges Mrs. Rogers with an offense similar to that charged in Counts II and III, but involving one Wheeler. Mrs. Rogers was found guilty.

Count IX charges the Rogers and Conklin with transporting or causing to be transported or aiding, etc. the transportation of one Wells from Portland to Snohomish County. (§ 2421, first paragraph and § 2(a) and (b)). All three were found guilty.

Thus all four appellants were convicted under the conspiracy count. Twitchell was convicted solely under that count. Mrs. Rogers was found guilty under six counts charging substantive offenses. (II, III, IV, VII, VIII and IX), Mr. Rogers under two such counts (VII and IX), and Conklin under one such count (IX).

Twitchell was sentenced to three years, Conklin to one year and one day under each of the two counts, Mrs. Rogers to two years under each of the seven counts, and Mr. Rogers to one year and one day under each of the three counts. In the case of each defendant, sentence under the substantive count or counts was made concurrent with the sentence under Count I.

Since Twitchell's appeal relates solely to Count I, the conspiracy charge, we first consider that appeal. His principal contention, properly preserved at all stages of the trial, is that the evidence does not sustain the conviction. We agree.

■ Neither prostitution nor maintaining or conspiring to maintain a house of prostitution is a federal offense. It is not the business of federal prosecutors to prosecute for state offenses, or of federal courts to entertain such prosecutions. And we think that federal courts must be on guard against attempts to convert what are essentially offenses against state laws into federal crimes via the conspiracy route. (See the opinion of Harlan, J., concurring in part and dissenting in part, in Ingram v. United States, 1959, 360 U.S. 672, 683, 79 S.Ct.

1314, 3 L.Ed.2d 1503; cf. Jackson, J., concurring, in Krulewitch v. United States, 1949, 336 U.S. 440, 455–458, 69 S.Ct. 716, 93 L.Ed. 790.) That appears to us to be what happened here.

■■ There is a mass of evidence from which a jury might find that Twitchell, who was sheriff of Snohomish County, conspired with various madams (Ashen, Rogers, Conklin) either separately or together, to operate one or more houses of prostitution in Snohomish County, Washington, in or near the City of Everett. According to this evidence, Twitchell's part was, in return for payoffs, to tolerate the operations and assure them a monopoly. But such a conspiracy is not a federal offense. The federal offense is, speaking generally, interstate transportation or inducement of transportation of women for purposes of prostitution, and the question we must decide is whether the evidence shows, in relation to Twitchell, participation in a conspiracy to commit such an offense. Since these are necessary elements in the substantive offense, the government must establish, if it charges a conspiracy to commit the offense, that these are objectives of the conspiracy, and that the person charged as a conspirator can be fairly said to be a party to the objectives.

■ We consider first, what the test is by which we should measure the evidence. We have in mind the established rules that it is not necessary to show that the substantive offense was actually committed (Goldman v. United States, 1918, 245 U.S. 474, 477, 38 S.Ct. 166, 62 L.Ed. 410; Marino v. United States, 9 Cir., 1937, 91 F.2d 691, 696, 113 A.L.R. 975), that once a conspiracy has been established, "slight evidence may be sufficient to connect a defendant with it" (Nye & Nissen v. United States, 9 Cir., 1948, 168 F.2d 846, 852, aff'd, 1949, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919), and that a conspirator need not be shown to know all of the details of, or parties to, the conspiracy (Marino v. United States, supra, at 696). It is still true that the conspirator must know the purpose of the conspiracy. (Ibid.)

■ Cases involving conspiracies to commit other federal offenses are not, in our judgment, particularly helpful. This is because of the peculiar nature of offenses under the Mann Act. It is not a violation of that Act to employ, in a house of prostitution, women who have come from other states of their own accord, even if their purpose in coming was to indulge in prostitution. (See McGuire v. United States, 8 Cir., 1945, 152 F.2d 577, 579–580) Thus proof, of which there is a circumstantial modicum in this case, that Twitchell knew that some of the girls in the houses that he was protecting came from out of state, is not enough.

In this respect, the case differs from many federal conspiracy cases, in which the federal element is almost necessarily involved, such as mail fraud cases, (see Pereira v. United States, 1954, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435) or in which the principal object is to commit a federal offense, such as a conspiracy to defraud the United States (see Nye & Nissen v. United States, supra.) Here, the federal element is tangential to, and not necessarily involved in, the principal object of the conspiracy.

■ We think that, in a case of this kind, the evidence must show in relation to Twitchell that either:

1. he *directly* agreed to the illegal interstate transportation, or *directly* agreed to a scheme which could not be consummated without illegal interstate transportation, or *directly* agreed to a scheme in which it was known that the likelihood of illegal interstate transportation was *great* (it being understood that such agreement need not be overt, and may be inferred from circumstantial evidence; and that directness refers not to face-to-face dealings, but to the extent of his knowledge of the purpose and scope of the conspiracy) ; *or*

2. he evidenced his indirect agreement by substantial participation in the scheme *with actual knowledge* of the proposed, or completed, illegal interstate transportation. (The degree of knowledge required of the interstate aspect thus increases as the defendant's connection with the core agreement becomes more tenuous.) (See our decisions in Lee v. United States, 9 Cir., 1939, 106 F.2d 906, and Ege v. United States, 9 Cir., 1957, 242 F.2d 879; and also Harms v. United States, 4 Cir., 1959, 272 F.2d 478, and United States v. Crimmins, 2 Cir., 1941, 123 F.2d 271.)

■ Applying the foregoing test, we conclude that the evidence against Twitchell is insufficient, although viewed, as it must be, most favorably to the government. (Hansberry v. United States, 9 Cir., 1961, 295 F.2d 800). The government points first to the evidence heretofore mentioned showing a conspiracy involving Twitchell in payoffs for protection of the operations of the various madams. It then points to evidence showing that Twitchell visited at least one of the madams' operations occasionally, that his "bag man," Meyers, and his "contact man," Kosher, went there more often, that one of these two had been told that at least one girl had been brought up from Portland, and that Mrs. Rogers had brought her. It also points to evidence that several prostitutes working in the houses involved came from out of state. We are of the opinion, as we were in Ege, supra, that this evidence is not sufficient, however great a *suspicion* as to Twitchell's knowledge it may raise, to constitute *proof* of the offense here involved. The basic conspiracy, which the government spent a great deal of time proving, was not a conspiracy to commit federal offenses, with which Twitchell was charged. Some of the coconspirators may have intended to import out of state girls, and may have done so. But the basic conspiracy could have been carried out without these activities, and we do not think that the evidence sufficiently ties Twitchell in with a participation in, or a knowledge of or a purpose to commit the federal offenses that must be shown to be an object of the conspiracy.

■ Twitchell, according to the government's theory, was the principal figure in the conspiracy. Without his

participation, the operations of the three madams, which were conducted, for the most part, at different times and places, would more properly be characterized as, at best two, or perhaps more accurately three or more separate conspiracies, rather than the one big conspiracy charged. Any evidence that Conklin was a party to any conspiracy to violate the Mann Act is so weak as to be non-existent. And if she be eliminated, then we have only the two Rogers, conspiring with some of the other named conspirators, but not with the key man, Twitchell, and not with Conklin. This is hardly the conspiracy charged. Under these circumstances, we do not think that the convictions of Conklin and the two Rogers under Count I can stand (see Kotteakos v. United States, 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557; Canella v. United States, 9 Cir., 1946, 157 F.2d 470).

■ Each of these parties, however, was also convicted on one or more substantive counts. The sentences of each, as we have seen, were concurrent as to all counts on which each was convicted. It is therefore only necessary to examine one substantive count as to each. (Cohen v. United States, 9 Cir., 1962, 297 F.2d 760)

■ We first consider the appeal of Conklin, who was also known as Pollard. She was convicted under Count IX, relating to transportation of Terrell Wells from Portland to Everett in March, 1959. The count alleges that she and the two Rogers committed the offense. As to Conklin's part, if any, in the bringing of Wells to the vicinity of Everett, the evidence is as follows: Early in 1959, Mrs. Rogers was operating a motel called the Golden West, in which she also operated a house of prostitution. Mr. Rogers, not then her husband, assisted to an extent not fully delineated. In February, the two Rogers were in Portland, and Mrs. Rogers offered Wells a job as a prostitute. Meanwhile, in March of 1959, after this offer was made, Conklin rented rooms at the Golden West and began operating a house of prostitution there, continuing until May 30, when she was ordered to

close by the undersheriff. There is no evidence of prior connection between Conklin and the two Rogers. After Conklin's operations began, Wells came by bus to Tacoma, then was taken by the two Rogers to Seattle, and then to Everett. She got in touch with Mrs. Rogers from Tacoma, and was introduced by her to Conklin at the Golden West, and went to work for Conklin as a prostitute. It can be inferred that, when Wells went to work for her, Conklin knew that Wells had come from Portland. But there is no evidence that we can find, and the government points to none, from which it can be inferred that Conklin had anything to do with her coming, much less that, as alleged in Count IX, she transported her, caused her to be transported, or aided, abetted, counselled, induced or procured her transportation. So far as appears, her activities in connection with Wells were all after Wells came to Everett. (See Yaw v. United States, 9 Cir., 1955, 228 F.2d 382.) Conklin's conviction under Count IX cannot stand.

■ We come last to the two Rogers. Mrs. Rogers was convicted on six substantive counts. The evidence as to four of them, Counts II, III, IV, and VIII, is similar. In each case, following one or more conversations between Mrs. Rogers and a procurer in Portland, a girl was brought to the Golden West Motel and put to work as a prostitute. In each case, that was why she was brought. There is no proof that Mrs. Rogers paid for the transportation, or otherwise supplied it; the procurer supplied it. But in each case, we think, she counselled, commanded, or induced the transportation. This under 18 U.S.C. § 2(a), is enough. We do not consider Count VII.

Mr. Rogers was convicted under Counts VII and IX. We have reviewed the evidence under Count IX in connection with Conklin's appeal. We held it insufficient as to Conklin, but we think it sufficient as to Mr. Rogers. He was personally present when the job was offered to Wells, and, although he denies it, the jury could find that he was active

in Mrs. Rogers' "business," including procuring Wells from Portland. She came from Portland to Tacoma by common carrier. Wells' testimony was that she came to Washington to get her husband out of jail, but her method of doing so was to work as a prostitute first for Mrs. Rogers in Seattle, then for Conklin at the Golden West. The evidence is sufficient to sustain Mr. Rogers' conviction as one who counselled, commanded, or induced. We therefore do not consider Count VII.

 There remains the contention that without the prejudicial atmosphere created by all the testimony as to Count I, there was not sufficient evidence as to the other counts to cause the jury to find either of the Rogers guilty. We do not agree. It is quite true that a great deal of the evidence does not relate to the substantive counts on which the two Rogers were convicted. But much that was admissible against them under the conspiracy count was also admissible under the substantive counts. We refer to the proof as to their operation of a house of prostitution at the Golden West and elsewhere, the nature and extent of the operation, their dealings with the various prostitutes and procurers. Each substantive count named the woman, the approximate date of the transaction, and the parties involved in it. As to each substantive count, there is the testimony of the woman involved and of the procurer, where the latter was involved.[4] There could have been no difficulty on the part of the jury in determining whether these specific offenses were committed, whether or not they thought that the conspiracy was proved. They must be presumed to have considered each count, and the evidence relating to it, separately, as they were instructed to do. We think that in this respect the case falls within the principles applied in Schaffer v. United States, 1960, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921. It was not error to permit the indictment to go to the jury.

(Shayne v. United States, 9 Cir., 1958, 255 F.2d 739, 743.)

The judgment of conviction of appellant Twitchell is reversed. The judgment of conviction of the appellant Conklin is reversed. Each judgment of conviction of the appellants Rogers under Count I is reversed; in all other respects, each such judgment is affirmed.

4. In the Parker transportation (Count IV), one of the procurers, Ratcliff, did not testify. Apparently, he was a fugitive. Another, Winslow, did take the stand.