Eli LUBIN and Glenn M. Tharp, Jr.,
Appellants,

v.

UNITED STATES of America,
Appellee.

No. 17818.

United States Court of Appeals
Ninth Circuit.

Feb. 11, 1963.

Rehearing Denied April 10, 1963.

**420**

Henry L. Walleck, David Shane, Van Nuys, Cal., for appellant Tharp.

Max Solomon and John J. Bradley, Los Angeles, Cal., for appellant Lubin.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Section, and Timothy M. Thornton, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS, HAMLEY and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

Lubin and Tharp were convicted under a one count indictment charging them with conspiracy (18 U.S.C. § 371) to steal property belonging to banks (18 U.S.C. § 2113(b)), as banks are defined in 18 U.S.C. § 2113(f). Their principal contention on appeal is that the evidence does not sustain their conviction. Because we agree with that contention, we do not consider the other points made by them.

The conspiracy, if any, was to take money and other property from the possession of Armored Transport of Los Angeles (Armored). This would be an offense under the laws of California (Cal.Pen.Code §§ 182, dealing with conspiracy, and 484, dealing with theft). It would be a federal offense only if the objective was to take "property or money * * * belonging to" a federally protected bank (18 U.S.C. § 2113 (b) and (f)), and the crucial question is whether the evidence shows such a conspiracy. (Cf. Twitchell v. United States, 9 Cir., 313 F.2d 425.)

Tharp was an employee of Armored. That company operated a fleet of armored vehicles in the Los Angeles metropolitan area. Part of its business was to pick up money from the major offices of various large banks in central Los Angeles and deliver those moneys to various branches of those banks, and similarly, to pick up money and checks from the branches and deliver them to the major offices. It was stipulated that the banks served by Armored are "banks" as defined in 18 U.S.C. § 2113 (f). Another part of Armored's business was to pick up cash from the same banks and deliver it to various business firms for their use, primarily for change purposes, during the day, and to pick up from such firms their daily receipts— cash, checks, etc., and deliver them to the banks. Still another part of the business was "check-cashing." In conducting this business, employees of Armored would pick up cash from a bank, take it to the premises of a business or institution whose employees were receiving payroll checks, and there cash the checks. The checks so cashed and any remaining cash would then be returned to the bank. It is shown by the uncontradicted testimony of Tharp that, when moneys were received from the bank for check-cashing, the employee of Armored who was in charge would execute and deliver to the bank Armored's note for the amount received, and that the checks (and cash, if any) returned to the bank would be treated as payment of the note. Apparently Armored discounted the checks it cashed, thereby deriving its profit from the operation, so that normally the evening deposit with the bank, for Armored's account, would exceed the amount withdrawn in the morning against the note. Whether Armored paid any interest for the few hours' use of the money does not appear. But the form of the transaction was such that title to the money passed to Armored when it was delivered to the truck. No doubt this was the bank's purpose,

as the risk of loss was thereby shifted to Armored, and the bank then had a readily enforceable (and negotiable) means to compel payment, with interest, if there were a loss or shortage.

We think it clear that the moneys involved in the first type of business were at all times moneys belonging to the banks. We think that the evidence presented in this case is insufficient to support an inference that moneys being taken from the banks to the various business houses were moneys belonging to the banks while in Armored's truck and until delivered by Armored at destination. We think it clear, under the evidence presented in this case, that moneys and checks being taken from the particular business houses as to which there is evidence, to the banks, were not, while in Armored's possession, moneys or other property belonging to the banks. We think it equally clear that, from the time money was delivered to Armored's truck by the bank, the check-cashing money was not money belonging to the bank.

There is, however, a problem as to a stipulation made at the outset of the trial, which, the government contends, establishes the necessary federal element of the offense. We set forth the colloquy in the margin.[1] The government argues that neither appellant asked to be relieved of this stipulation, that both are bound by it,[2] and that it means that

1. "MR. THORNTON: Your Honor, rather in the interests of shortening time, may I just inquire whether a few basic facts are going to be contested, of counsel:

"First, we will, at various times, make reference to three basic Branches in Los Angeles, the Bank of America, to the various Branches, the Security-First National Bank, and I think two or three Branches, and the First Western Bank & Trust company at 6th and Spring, that is the Branch only. May we inquire as to whether or not the defendants contest that these are Banks within the meaning of Section 2113—

"THE COURT: Well, I am sure they will stipulate that they were Banks within the meaning of the law.

"MR. BRADLEY: [Counsel for Lubin] We so stipulate.

"THE COURT: You so stipulate.

"MR. JOHNSON: [Counsel for Tharp] We so stipulate.

"MR. THORNTON: Is that agreeable also, Mr. Tharp?

"DEFENDANT THARP: Yes, sir.

"DEFENDANT LUBIN: Yes.

\*       \*       \*       \*       \*

"MR. THORNTON: The stipulation is that the Branches of the Bank of America in the Los Angeles area, the Branches of the Security-First National Bank and the First Western Bank and Trust Company at 6th and Spring, Los Angeles, are banks within the meaning of Title 18 United States Code, Section 2113(f).

"The next question on which we will rely on documentary evidence is whether or not they contest that the money being carried by the Armored Transport to the Banks which I just mentioned, to which we will refer in testimony, is money belonging to the particular banks? Are you stipulating to that?

"MR. BRADLEY: The way you put it, counsel, I couldn't very well stipulate to that, because we wouldn't know where the money is coming from, but if the money was coming from the banks, that would change the fact. You said the money 'coming to the banks.'

"MR. THORNTON: Well, perhaps I can—

"THE COURT: You have to change that to 'from the banks.'

"MR. THORNTON: Money coming from the banks on the truck, it was.

"MR. BRADLEY: Yes. But you said to the banks.

"MR. THORNTON: Excuse me. Money coming from the banks.

"THE COURT: To the truck.

"MR. THORNTON: To the truck is money belonging to the banks.

"MR. BRADLEY: We will so stipulate.

"THE COURT: All right. You will so stipulate.

"MR. JOHNSON: Yes, as changed in your statement the defendant Tharp will so stipulate."

2. Reliance is upon H. Hackfeld & Co. v. United States, 1905, 197 U.S. 442, 446–447, 25 S.Ct. 456, 49 L.Ed. 826; Jones v. United States, 7 Cir., 1934, 72 F.2d 873; and United States v. Rodriguez, 7 Cir., 1957, 241 F.2d 463. In each case, the stipulation was completely clear, and a direct effort was made to repudiate it. None of these cases involves the problem here presented, which is: what does the stipulation mean?

"money being carried by trucks of Armored * * * which had been taken on the truck from a bank was money belonging to the respective banks."

■ We do not think that the stipulation should be so read. Its meaning is by no means clear, and we think that, when such is the case, it should be construed against the government and favorably to the accused. So read, it means only that "money coming from the banks *, * * to the truck is money belonging to the banks." Thus the stipulation only covers the brief time when the truck was being loaded at the bank. In support of our view is the fact that the court allowed Tharp's evidence as to the giving of the note, over the government's objection. This evidence is uncontradicted, although the government could easily have offered contrary evidence, if any existed.

We have discussed the nature of Armored's business, and the stipulation, at this length because the one conspiracy that the government really proved was a conspiracy to rob Armored's truck No. 31 while it was being driven by Tharp on the way from the Bank of America to the Los Angeles County Hospital for the purpose of check-cashing at the hospital. A conspiracy to rob that truck under those circumstances could not be a conspiracy to commit the federal offense charged.

■■ The federal ingredient in this case is somewhat different from the federal ingredient in Twitchell, supra. We assume that in this case the offense would be proved by evidence showing (a) a conspiracy to rob truck No. 31 on its check-cashing run to the hospital and (b) that moneys in the truck on such run belonged to the bank, even though the defendants had no knowledge that the money was bank money. In other words, a scheme to take the money, plus the fact that it is bank money, would be enough. It would be no defense to a charge of robbing an insured state bank that the robbers thought it was not insured, and had selected it for that reason, hoping thereby to avoid entanglement with federal law. Conversely, it would seem that a scheme to take the money, if in fact it is not bank money, is not enough, even if the defendants may have mistakenly believed that it was or might be bank money. We do not think that the Congress, in enacting the conspiracy statute, intended to make criminal schemes which, if successfully carried out, would not result in the commission of federal substantive offenses. (See Ventimiglia v. United States, 4 Cir., 1957, 242 F.2d 620; O'Kelley v. United States, 8 Cir., 1941, 116 F.2d 966; Woo Wai v. United States, 9 Cir., 1915, 223 F. 412 (alternative holding). But see Craven v. United States, 1 Cir., 1927, 22 F.2d 605.)

■ The evidence as to any conspiracy to rob any other truck, one that would be carrying bank money, is, in our view, insufficient to sustain a conviction.

There was some discussion between the defendants about three markets and a catering company in the Sherman Oaks and Van Nuys areas, but it hardly rises to the dignity (if we may call it that) of proof of a conspiracy to take money from them, much less to take money belonging to one of the banks from one of Armored's trucks serving them. Two were not being serviced by Armored; the other two had written contracts with Armored, and these indicate that the property to be transported belonged to Armored's customer, rather than to a bank. There was also evidence that a large sum of money belonging to a bank did disappear from one of Armored's trucks, No. 59, but the evidence does not show a conspiracy between the defendants to rob that truck.

■ There was also an admission made by Tharp to the police after his arrest, and long after the conspiracy had ceased, that he gave Lubin a key to truck No. 59 a few weeks before the money disappeared from that truck. This was denied by Tharp on the stand. The admission was properly received against Tharp and excluded as against Lubin. (Delli Paoli v. United States, 1957, 352 U.S. 232, 237, 77 S.Ct. 294, 1 L.Ed.2d 278). We find no other evidence sufficient to sustain a

finding that it was a part of the conspiracy that truck No. 59 was to be robbed. Under these circumstances, it would be quite improper to sustain the conviction of Tharp on the theory that he did conspire with Lubin to rob truck No. 59, when we must find that there is no evidence sufficient to sustain a conviction of Lubin for conspiring with Tharp to rob that truck. Conspiracy requires a plurality of actors, and an acquittal of one of two conspirators is an acquittal of the ·other. Herman v. United States, 5 Cir., 1961, 289 F.2d 362, 368 (dictum); 2 Wharton, Criminal Law § 1676 (12th ed. 1932). Although it is true that, by reversing Lubin's conviction, we do not produce precisely this situation, (see De Camp v. United States, 1926, 56 App.D.C. 984, 10 F.2d 984), if we let Tharp's conviction stand he might well be the only one ever convicted. (Cofer v. United States, 5 Cir., 1930, 37 F.2d 677; Bartkus v. United States, 7 Cir., 1927, 21 F. 2d 425.) The requisite plurality could have been supplied by proof that a person not charged conspired with Tharp, under an indictment referring, as here, to a conspiracy embracing persons unknown. (See Didenti v. United States, 9 Cir., 1930, 44 F.2d 537.) There was some claim by the government that there was a conspirator not named in the indictment, one Pauley; but there is nothing to tie Pauley into a conspiracy to rob truck No. 59.

It may appear that we are unduly compartmentalizing the conspiracy; that it was really a conspiracy of a more general character, to take money from one or more of Armored's trucks. In a sense, this is true; that is why we say that the proof would sustain a conviction under the California law. But here, as we have already pointed out, there must be an added ingredient—the money to be taken must be money belonging to banks as defined in the federal statute. We do not think that the fact that sometimes some of Armored's trucks did carry some money belonging to one or more such banks is enough, when, as here, the evidence shows that the conspiracy was really aimed at robbing trucks that, so far as the evidence shows, did not carry money belonging to banks.

Accordingly, the judgment must be, and it is, reversed as to both appellants.