**UNITED STATES of America, Plaintiff/Appellee,**

v.

**James Henry PATTERSON, Defendant/Appellant.**

**No. 81–1211.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 10, 1981.

Decided June 2, 1982.

As Amended on Denial of Rehearing July 16, 1982.

---

Douglas R. Schmidt, Winslow & Schmidt, San Francisco, Cal., for defendant/appellant.

Edward R. J. Kane, Asst. U. S. Atty., Reno, Nev., for plaintiff/appellee.

Before KENNEDY and SKOPIL, Circuit Judges, and BURNS,* District Judge.

JAMES M. BURNS, District Judge.

Defendant James Patterson appeals his conviction on two counts of receiving stolen property, 18 U.S.C. § 2313, and on one count of conspiracy to transport stolen motor vehicles in interstate commerce, 18 U.S.C. §§ 371 and 2312. He assigns several

---

* The Honorable James M. Burns, Chief United States District Judge for the District of Oregon, sitting by designation.

errors: 1) the grand jury testimony of a witness was erroneously admitted into evidence; 2) the evidence was insufficient to prove his knowledge; 3) the conspiracy conviction should be reversed because his alleged coconspirators were acquitted; 4) the jury was improperly instructed, and 5) the closing argument of defendant's counsel was improperly limited.

We affirm the convictions for receiving stolen property and reverse the conspiracy conviction.

Three forklifts were stolen from different companies in California and eventually were recovered in the Reno-Sparks area of Nevada. The first was a large, yellow, 1978 Liftall HT 100, No. 78664. The defendant purchased this forklift October 30, 1978, from two men he met at a casino in Sparks. The second forklift was a small, yellow, 1977 Liftall LT 60, No. 77511. It was purchased from two men outside the defendant's house in late April 1979 by Manuel Crummett, a contractor working for the defendant. The defendant later lent this forklift to Western Nevada Supply, which still later sent it to Reno Forklift for repairs. The third forklift was a small, green, 1978 Liftall LT 60, No. 78595, which appeared at the defendant's house at the same time as the second forklift. Defendant bought this forklift from two men who returned the day after they delivered the forklifts to defendant's house. The two men who sold defendant the third forklift were the same men who sold him the first one. The government alleged the sellers were Patterson's codefendants, Gerald Heidinger and Steve Austin. The grand jury indicted Heidinger and Austin for transporting the second and third forklifts in interstate commerce and selling them and for conspiring with Patterson and unknown other persons to transport stolen motor vehicles in interstate commerce. As part of the conspiracy count Heidinger and Austin were accused of delivering the first forklift to Patterson, and Patterson was accused of receiving the second and third forklifts from Heidinger and Austin. Heidinger and Austin were acquitted by the same jury which convicted defendant.

The defendant and James McKay, defendant's nephew and then an employee of his, replaced the ignition system on one of the two forklifts delivered to the defendant's property in late April 1979. In addition, they cut off padlocks from the gas tanks and elsewhere on both forklifts and removed side panels from one of them. The grand jury indicted the defendant May 5, 1980, charging him with receiving stolen property and with conspiring to transport stolen motor vehicles. The defendant was convicted after a jury trial in July 1980 and was sentenced to three, four-year jail terms, each to run concurrently. The trial judge denied defendant's motion for a new trial March 23, 1981, and judgment was entered.

ISSUES

I. Grand Jury Testimony

Testifying under a grant of immunity, James McKay (defendant's nephew) told the grand jury on March 10, 1980, the defendant had told him the forklifts were obtained from a man in California and they had been stolen. At trial McKay testified he could not remember the defendant telling him about the source or legality of the forklifts.[1] After the prosecutor tried without success to refresh McKay's memory with a transcript of his grand jury testimony, the trial judge allowed the pertinent portion of the grand jury testimony to be read into the record as a past recorded recollection exception to the hearsay rule.[2]

---

1. Knowledge that the property in question has been stolen is one of the essential elements of the crime of receiving stolen property. 18 U.S.C. § 2313 (1970).

2. The government first attempted to refresh McKay's memory by showing him a transcript of his testimony before the grand jury:

McKay: I get a recollection in my memory saying that I must have said that. But as I sit here right now I cannot say that I can remember Mr. Patterson or him saying this to me at that time. It's been a long time, you know. This is almost two years ago, and I've got to swear under oath right now, and I can't say that I can actually remem-

■ A document is admissible as past recorded recollection if 1) the witness once had knowledge about the matters in the document, 2) the witness now has insufficient recollection to testify fully and accurately, and 3) the record was made at a time when the matter was fresh in the witness' memory and reflected the witness' knowledge correctly.[3] *United States v. Edwards,* 539 F.2d 689, 691–692 (9th Cir.), *cert. denied,* 429 U.S. 984, 97 S.Ct. 501, 50 L.Ed.2d 594 (1976). *Accord, Clark v. City of Los Angeles,* 650 F.2d 1033, 1037–1038 (9th Cir. 1981) (stating the rule but not reaching the issue of admissibility).

Defendant claims the third foundation requirement of Fed.R.Evid. 803(5) was not met and thus admission of the grand jury transcript was error. The defendant specifically contends the government failed to show 1) the matter was fresh in McKay's mind when he testified before the grand jury, and 2) McKay's statements to the grand jury were an accurate reflection of his knowledge at that time. We disagree.

■ We start with the proposition that a district judge's ruling to admit evidence will not be overturned absent abuse of discretion. *See, e.g., United States v. Cox,* 633 F.2d 871, 874 (9th Cir. 1980), *cert. denied,* 454 U.S. 844, 102 S.Ct. 159, 70 L.Ed.2d 103 (1981); *United States v. Ford,* 632 F.2d 1354, 1377 (9th Cir. 1980), *cert. denied,* 450 U.S. 934, 101 S.Ct. 1399, 67 L.Ed.2d 369 (1981); *United States v. Kearney,* 560 F.2d 1358, 1369 (9th Cir.), *cert. denied,* 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977). The trial judge has broad discretion in determining whether evidence is supported by proper foundation. *United States v. Ford,* 632 F.2d at 1377. Assuming foundational requirements are met, admission into evidence of portions of grand jury testimony as past recorded recollection is proper use of such testimony. *See United States v. Barrow,* 363 F.2d 62, 67 (3rd Cir. 1966), *cert. denied,* 385 U.S. 1001, 87 S.Ct. 703, 17 L.Ed.2d 541 (1967). To decide whether McKay's grand jury testimony was erroneously admitted, we must determine whether the trial court abused its discretion in finding that the matter was fresh in McKay's mind when he testified before the grand jury and that his statements to the grand jury accurately reflected his knowledge at that time.

■ A traditional rule, commonly applied before adoption of Rule 803(5), was that freshness is defined by contemporaneous-

---

ber him saying that. If I can say that, I can go off with that and say—

The testimony continued:

Q. As you sit here today, you can't remember what Mr. Patterson said to you about where he got the forklifts?

A. Right.

Q. But at the time you appeared before the Grand Jury back in March and testified to what he said, at that time apparently you were able to recall; is that correct?

A. Yeah, I was a lot madder at him then.

Q. Well, were you able to recall a little bit better?

A. I must have been.

Q. You say you were mad at them (sic) then. Were you lying before the Grand Jury?

A. No, I don't think so.

The government then offered a portion of the grand jury transcript into evidence. After defense counsel objected, the following exchange occurred:

THE COURT: I think this is admissible. You can't remember this at this time; is that true?

THE WITNESS: Yes.

THE COURT: But is the Grand Jury transcript which you read, is it accurate?

THE WITNESS: I believe so.

THE COURT: I'm going to allow this to be read under Rule 803(5), past recollection recorded.

**3.** Rule 803(5) of the Federal Rules of Evidence provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

ness, i.e., the witness' recollection must have been recorded at or near the time of the event. 3 J. Wigmore, *Wigmore on Evidence*, § 745 (Chadbourne rev. 1970). In this case McKay's grand jury testimony occurred at least ten months after the conversation in which the defendant told him the forklifts were stolen. Even before the adoption of Rule 803(5), though, some courts used a more flexible rule giving the trial judge discretion to determine freshness on a "case-by-case basis giving consideration to all pertinent aspects including the lapse of time which reasonably and properly bear upon the likelihood of the statement being an accurate recordation of the event to which the memory related." *United States v. Senak*, 527 F.2d 129, 141 (7th Cir. 1975), *cert. denied*, 425 U.S. 907, 96 S.Ct. 1500, 47 L.Ed.2d 758 (1976) (pre-Rules case).[4] Broad discretion for the trial judge is clearly intended under Fed.R.Evid. 803(5), as the advisory committee notes indicate: "No attempt is made in the exception to spell out the method of establishing the initial knowledge or the contemporaneity and accuracy of the record, leaving them to be dealt with as the circumstances of the particular case might indicate." 28 U.S.C. App. p. 581 (1976). *See United States v. Williams*, 571 F.2d 344, 348–50 (6th Cir.), *cert. denied*, 439 U.S. 841, 99 S.Ct. 131, 58 L.Ed.2d 139 (1978) (finding no abuse of discretion in admitting under Rule 803(5) statement of witness to agent relating conversation that took place six months earlier).

We cannot say the trial judge abused his discretion in finding that McKay's memory was fresh at the time he testified before the grand jury, although the question admittedly is a close one. At least ten months elapsed between McKay's conversation with the defendant and his grand jury testimony. McKay admitted he was angry with the defendant when he appeared before the grand jury. In attempting to lay the foundation, the prosecutor and trial judge asked ambiguous questions, and McKay equivocated wherever possible. Still, the trial judge elicited responses showing that at trial McKay could not remember his conversation with the defendant and that before the grand jury he had remembered the crucial conversation. Thus, it was well within the discretion of the trial judge to determine, under all of the circumstances, that the conversation had been fresh in McKay's mind when he appeared before the grand jury.

The past recorded recollection exception also requires a showing that the record accurately reflected the witness' knowledge at the time the record was made. The defendant characterizes the trial court's inquiry of McKay on that subject as asking McKay whether the grand jury *transcript* was accurate rather than whether his grand jury *testimony* was accurate. We reject the defendant's characterization as frivolous. We deem the trial court's question to have required from McKay a response regarding the accuracy of his statements to the grand jury (as embodied in the transcript). McKay told the trial court he did not think he had lied to the grand jury. He also said he had recalled the events in question better when he testified before the grand jury. Moreover, the indications of reliability are stronger in this case than in *United States v. Edwards*, 539 F.2d at 691–692.[5] Therefore, we find no abuse of dis-

---

**4.** In *Senak* the court rejected contemporaneousness as the sole test of whether an event was fresh in a witness' mind at the time the record was made. There, the trial court admitted a witness' statement made three years after the event in question; here, the period is only ten months. In *Senak*, however, the court noted the existence of unusual circumstances indicating the witness' fresh memory and reliability of her knowledge at the time she made the statement. The recorded statement displayed no lapses in the witness' memory. The state-

ment was specific and detailed. The witness had read her statement and had edited it before signing it as a true account of her knowledge at that time. The court observed that the witness had been trying to remember not a routine transaction but arrangements with a lawyer who was defending her boyfriend against criminal charges. Finally, the witness testified explicitly at trial that her statement had been true at the time she made it.

**5.** In *Edwards* this court upheld admission of a statement made by a companion of the defend-

cretion in the trial court's determination that McKay's grand jury testimony was an accurate reflection of his knowledge at that time.

■ In summary, the grand jury testimony was admissible as past recorded recollection. In the trial judge's determination that the foundation requirements had been met, we find no abuse of discretion. Further, even if the trial court had abused its discretion, the defendant suffered no prejudice thereby because the crucial part of McKay's grand jury testimony, i.e., defendant had told him the forklifts had been stolen, came into evidence without objection by other means.[6]

Defendant also claims the damning testimony was inadmissible as a prior inconsistent statement under Fed.R.Evid. 801(d)(1)(A). We need not reach that issue because of our holding that McKay's grand jury statements were admissible as past recorded recollection.

## II. Sufficiency of the Evidence

■ Defendant contends the evidence, even including McKay's grand jury testimony, is insufficient to prove the element of knowledge, namely, that the defendant knew the forklifts were stolen. Defendant admitted receiving the forklifts. McKay's grand jury testimony provided proof that the defendant knew the forklifts had been stolen. McKay made the same statement to law enforcement officers on previous occasions.[7] Despite McKay's evasiveness, his selective memory, his contradictory testimony and his relationship with the defendant, the jury was entitled to believe him. *United States v. Anderson*, 642 F.2d 281, 285 (9th Cir. 1981). Further, the test for sufficiency of the evidence is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). The findings of the trier of fact will not be set aside unless clearly erroneous. *Anderson*, 642 F.2d at 285. There was sufficient evidence for the jury to conclude beyond a reasonable doubt that defendant received the forklifts and that he knew they had been stolen. Therefore, we uphold the jury's verdict on the convictions of receiving stolen property.

## III. Conspiracy Count Conviction

Defendant urges reversal of his conspiracy conviction; his coconspirators who were named in the indictment were acquitted and, he claims, no evidence was presented

ant, describing events leading to the crime, even though the companion admittedly was drunk when he gave the statement to police. The statement was made the day after the events in question, was signed by the witness and contained an inscription in his handwriting acknowledging he had read the statement and it was correct to the best of his knowledge. At trial the companion testified he recalled making the statement, and, although he had no memory of the underlying facts, "he believed the statement accurately reflected his recollection at the time it was made." 539 F.2d at 692.

The indications of reliability are stronger, we believe, in the instant case. McKay recalled testifying before the grand jury, he remembered being under oath at that time and, although he admitted exaggerating his testimony to the grand jury, he also said he thought he had told the truth.

**6.** Government Proposed Exhibit No. 22, which was not offered into evidence, was a two-page statement handwritten by McKay and given to Detective Glenn Barnes of the Washoe County Sheriff's Office. Barnes and FBI Agent Carl Olsen interviewed McKay jointly about February 12, 1980, at the sheriff's office. McKay testified, after his memory was refreshed by reading his own statement, that he had written in the statement he had asked the defendant where he obtained the forklifts. The essence of McKay's testimony was that the defendant told him he had a friend who stole them from a loading dock at his place of employment. (RT 157–158) Further, Agent Olsen testified, after refreshing his memory with his own report, that McKay had said Patterson told him they were removing padlocks and side panels from the forklifts because they were stolen. (RT 391)

**7.** *See* note 6 *supra.*

to show he conspired with unnamed persons.

 The general rule is that inconsistent verdicts may stand, even when a conviction is rationally incompatible with an acquittal. *United States v. Brandon*, 633 F.2d 773, 779 (9th Cir. 1980); *United States v. Dunn*, 564 F.2d 348, 360 & n.24 (9th Cir. 1977). An exception to that rule is that acquittal of all but one of the alleged conspirators requires acquittal of the remaining defendant. *Lubin v. United States*, 313 F.2d 419, 423 (9th Cir. 1963). However, if an indictment refers to unknown persons as coconspirators and the government supplies evidence to support a charge that the defendant conspired with the unknown persons, a conspiracy conviction will stand even if all other named defendants are acquitted. *Id.*

 The other two defendants charged with conspiracy, Heidinger and Austin, were acquitted. Although the indictment refers to other unknown persons, the government's only evidence to support the involvement of unknown persons with defendant in a conspiracy was that defendant had told McKay that he had a friend working at a truck line or forklift business who would steal the forklifts and bring them to him. This, even together with the proof that defendant knowingly received stolen property, was not sufficient to support a reasonable inference that defendant had engaged in a conspiracy to transport stolen motor vehicles in interstate commerce with an unknown person. *United States v. Gardner*, 475 F.2d 1273, 1278 (9th Cir. 1973), *cert. denied*, 414 U.S. 835, 94 S.Ct. 178, 38 L.Ed.2d 70; *see United States v. Espinosa-Cerpa*, 630 F.2d 328, 330 n.2 (5th Cir. 1980); *cf. United States v. Allen*, 613 F.2d 1248, 1253 & n.6 (3rd Cir. 1980) (evidence sufficient to show defendant conspired with some other person); *Didenti v. United States*, 44 F.2d 537, 538 (9th Cir. 1930) (evidence sufficient to show defendant conspired with persons unnamed in indictment). Therefore, Patterson's conspiracy conviction cannot stand.

## IV. Jury Instructions

 Defendant objects to jury instructions 19 and 23 on grounds they are contradictory on the issue of intent. Defendant's counsel did not object to either instruction when the trial judge reviewed each proposed jury instruction with both counsel. Defendant's counsel also did not request additional instructions on the issue of intent. In the absence of a showing that substantial rights of the defendant were affected, the appellate court is not required to consider objections to the instructions for the first time on appeal. *United States v. Alvarez*, 469 F.2d 1065, 1067 (9th Cir. 1972). There is no showing here that substantial rights of the defendant were affected. Therefore, we decline to consider the defendant's objections to jury instructions for the first time on appeal. If we were to consider the objections made, however, we would find them without merit. Considered in their entirety, the instructions adequately explain the issue of intent.

## V. Closing Argument

 Finally, defendant contends that the trial judge abused his discretion by limiting to 50 minutes the closing argument of defendant's counsel. The trial judge notified counsel a few days in advance that he intended to limit the length of closing arguments. He extended the time allotted to defendant's counsel by five minutes when requested. During argument the trial judge gave counsel a two-minute warning but did not interrupt again. We find no abuse of discretion. *United States v. Jones*, 534 F.2d 1344, 1346 (9th Cir.), *cert. denied*, 429 U.S. 840, 97 S.Ct. 114, 50 L.Ed.2d 108 (1976); *United States v. Salazar*, 425 F.2d 1284, 1287 (9th Cir. 1970).

AFFIRMED IN PART AND REVERSED IN PART.