UNITED STATES of America,
Plaintiff-Appellee,

v.

Israel VALLES–VALENCIA,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Ricardo Vigil BUSTAMANTE,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Guillermo SOTO–LEAL,
Defendant-Appellant.

Nos. 84–1258, 84–1259 and 84–1285.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 12, 1986.

Decided Feb. 26, 1987.

---

13. Since we reverse, Appellees' request for attorney's fees is denied.

Walter B. Nash and James L. Ripley, Tucson, Ariz., for defendant-appellant Soto-Leal.

William G. Walker, Tucson, Ariz., for defendant-appellant Valles-Valencia.

Bertram Polis, Tucson, Ariz., for defendant-appellant Bustamante.

John M. Roll, Tucson, Ariz., for plaintiff-appellee U.S.

Before GOODWIN, NORRIS and BRUNETTI, Circuit Judges.

GOODWIN, Circuit Judge:

Bustamante and Valles-Valencia (Valles) appeal their conviction of possession of marijuana with intent to distribute. Soto-Leal appeals his conviction for conspiracy to distribute marijuana and possession of marijuana with intent to distribute. We reverse Soto-Leal's conviction for conspiracy and affirm the judgments appealed from in all other respects.

The appellants challenge a number of rulings by the district court, but the principal issue is whether the arrest of the defendants by officers investigating a report of a burglary in progress contaminated all the evidence and compelled its exclusion.

A neighbor, Jerry Hauser, reported to the Pima County Sheriff's Office that two trucks and a truck-trailer rig were parked at a nearby house, the owners of which he understood to be on vacation. Hauser reported that he had seen several men, had questioned one of them, and received evasive answers which caused him to suspect that a burglary was in progress. Officers dispatched in response to the call found the trucks and trailer at the house and saw two men enter the house. Officer Hines then noticed Ruben Cruz-Sinotez [1] and appellant Valles standing next to a truck. Officer Hines questioned Cruz-Sinotez and Valles and discovered that they did not speak English. He arrested and handcuffed both men. Meanwhile, officer Gray observed Francisco Villa-Tapia attempting to unhook the trailer from its truck. When Villa-Tapia told officer Gray that he did not live at the house and did not know who did, the officer asked him what was going on and received no answer. This prompted officer Gray to direct Villa-Tapia to put his hands on the trailer. When Villa-Tapia attempted to get into the cab of the truck, the engine of which was running, officer Gray handcuffed him. During this time, radio traffic began to produce a small convention of police officers.

Based on what Hauser had told them, officers Gray and Slawinski believed that four other suspects were still unaccounted for. As the officers approached the house, they noted that a screen on the lower floor appeared to be pried away from the window and that a sliding glass door on the upper floor was partially open. The officers then walked up the outside stairway to the second story landing where they were assaulted by the strong odor of marijuana emanating from within the house. Entering through the open door, the officers discovered a closed box of .44 Magnum ammunition on a table. They then found Soto-Leal and Bustamante in the living room and quickly handcuffed them.

With five suspects handcuffed and under arrest, Gray and Slawinski re-entered the house to see if anyone else was present. As the officers descended to the first floor, they discovered that the house was, in fact, a warehouse containing several rooms packed from floor to ceiling with marijuana.

Agents from the Federal Drug Enforcement Agency joined the assembling law enforcement officers. Thereafter, the house was kept under guard while warrants were obtained for further searches. Phone numbers and addresses discovered at the house led to an investigation of a second house which contained substantial quantities of baled marijuana and other evidence incriminating various individuals. The five arrested suspects were taken to jail. The appellants challenge virtually all the physical evidence, as well as statements made by those arrested at the scene, as the product of an illegal arrest and of

**1.** Ruben Cruz-Sinotez and Francisca Villa-Tapia were dismissed from the case during trial and are not concerned in these appeals.

the officers' original warrantless entry into the house.

## The Suppression Hearing

The government prevailed on the suppression motions on the theory that the officers had the duty to preserve the status quo by handcuffing the suspects they encountered during the course of investigating a report of an on-going burglary. The government contends that the discovery of a major warehouse full of controlled substances, instead of house burglars carrying off valuables, merely constituted the fortuitous and inevitable result of correct police procedure under the circumstances.

■ The state of the law on the admissibility of evidence discovered during rapidly escalating police investigations is not crystal clear. *Compare United States v. Strickler*, 490 F.2d 378 (9th Cir.1974) *and United States v. Russell*, 546 F.2d 839 (9th Cir.1976). *See also United States v. Richards*, 500 F.2d 1025 (9th Cir.1974), *cert. denied*, 420 U.S. 924, 95 S.Ct. 1118, 43 L.Ed.2d 393 (1975). But, in this case, the officers gained no evidence as the direct or indirect result of the seizure of the defendants as the officers encountered them. As the Supreme Court set out in *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), we must judge the admissibility of evidence which is alleged to be the fruit of unconstitutional police activity under a threshold "but for" test: "[O]ur cases make clear that evidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of the discovery of the evidence. Suppression is not justified unless 'the challenged evidence is in some sense the product of illegal governmental activity.'" *Id.* at 815, 104 S.Ct. at 3391 (citing *United States v. Crews*, 445 U.S. 463, 471, 100 S.Ct. 1244, 1249, 63 L.Ed.2d 537 (1980)). Although the police handcuffed Valles-Valencia and his two compatriots face down on the driveway in order to secure the area before they approached the house, their investigation of the suspected burglary would have compelled them to proceed even without such a

questionable seizure. Whether one officer would have had to remain behind to watch the suspects would not have changed in the least the subsequent search of the home, for which the officer had probable cause. Because none of the evidence used to convict Valles-Valencia was tainted by his seizure, even if that seizure was illegal, the arrest could not be a basis for setting aside his conviction. *See Gerstein v. Pugh*, 420 U.S. 103, 120, 95 S.Ct. 854, 865–66, 43 L.Ed.2d 54 (1975). All the actions of the suspects and the statements they made to the police on the scene occurred before the alleged illegal arrests.

■ The circumstances known to the officers supported probable cause to enter the building to learn what was happening. After the officers entered the upstairs and arrested Soto-Leal and Bustamante, they were justified in conducting a protective sweep of the remaining rooms. They reasonably believed that "there might be other persons on the premises who could pose some danger to them." *United States v. Gardner*, 627 F.2d 906, 909–10 (9th Cir. 1980).

Hauser's report that he had seen two men "running into the brush" led the police reasonably to believe that two accomplices remained at large somewhere on the premises. The belief that the remaining suspects might be armed heightened the urgency of rounding them up. Thus, we may distinguish this case from the drug investigation cases, especially *United States v. Spetz*, 721 F.2d 1457 (9th Cir.1983) and *United States v. Basurto*, 497 F.2d 781 (9th Cir.1974), in which the risk of harm to the arresting officers was purely speculative. Here, the box of ammunition seen in the house provided a basis for fearing that remaining suspects in the vicinity of the house might be armed.

More problematic than the first entry and the initial protective sweep are subsequent entries by superior officers and detectives. To the extent that the officers should have postponed these entries until warrants had been obtained, appellants argue that the entries violated the fourth

amendment rights of persons entitled to be in the house. We need not, however, canvas all the questions presented by these "tourist type" visits by curious officers who had assembled in response to radio information about a massive storehouse of contraband.

■ Even if exigent circumstances no longer supported these further intrusions, or if these intrusions exceeded the scope of the rationale exempting them from the warrant requirement, appellants have not shown how evidence traceable to these later intrusions prejudiced their defense. The prosecution obtained all the later discovered evidence under a warrant. Officers did not use the cumulative evidence observed by others in obtaining the warrants. Evidence legitimately observed during the protective sweep supported the warrants. Appellants do not claim that observations by other officers were needed to enhance the affidavits in support of the search warrants. Because evidence obtained independently of any possibly illegal searches amply corroborated the search warrants, they would stand whether or not the redundant searches were illegal as abstract questions of fourth amendment law. As the prosecution argues, *Segura v. United States,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599, and *United States v. Lancellotti,* 761 F.2d 1363 (9th Cir.1985), have foreclosed continued adherence to the broad exclusionary rule of *United States v. Allard,* 634 F.2d 1182 (9th Cir.1980) (illegal seizures pending a search warrant require exclusion of its fruits despite the search warrant's basis in previous independent source).

### Search of Second House

■ None of the appellants has shown that he possesses standing to challenge the search of the second (Placita Quince) residence. This residence was leased in the names of two acquitted defendants, Lea Peterson and Jean Sweetser. In the absence of a showing that a convicted defendant's privacy interests were invaded, the question whether the Placita Quince war-rant was the fruit of an illegal search is not before us.

### The Admissibility of Drug Ledgers

■ Appellants contend that drug ledgers discovered in the first residence should have been suppressed because (1) the warrant failed to describe them; and (2) they constituted hearsay. The first objection fails because the ledgers were in plain view. Although the officers may not have recognized immediately their incriminating nature, this court has held that a police officer may "inspect an item found in plain view to determine whether it is evidence of a crime if he 'has a "reasonable suspicion" to believe that the discovered item is evidence.' " *United States v. Hillyard,* 677 F.2d 1336, 1342 (9th Cir.1982), quoting *United States v. Wright,* 667 F.2d 793, 798 (9th Cir.1982). Here, the relationship of the ledgers to marijuana trafficking was obvious.

■ Appellants' second objection rests on *United States v. Ordonez,* 722 F.2d 530 (9th Cir.1983), *reh'g denied,* 737 F.2d 792 (9th Cir.1984), a case distinguishable on its facts. *Ordonez* held that entries in a ledger constitute inadmissible hearsay when the government cannot identify the person(s) who made the notations. *Id.* at 535–36. The *Ordonez* court carefully considered three hearsay exceptions: (1) the statement of a party opponent; (2) the statement of a co-conspirator made during and in furtherance of the conspiracy; and (3) the business records exception. *Id.* at 534–36. *Ordonez* held that the government's failure to identify the declarant or indicate the basis of his knowledge vitiated the foundation required to establish the statement's reliability. In this case, however, the ledgers which contained dates that fell within the span of the charged conspiracy were in Soto-Leal's handwriting. These entries were therefore admissible against Soto-Leal as his own admissions; likewise, they were admissible against Valles and Bustamante as the admissions of a charged co-conspirator made during and in furtherance of the marijuana con-

spiracy. Soto-Leal's unavailability—a showing required to satisfy the Confrontation Clause, *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980)—flowed from his testimonial privilege not to take the stand in his own trial. Because the ledgers fell within hearsay exceptions with respect to all three appellants, the trial court properly received them into evidence.

### Denial of Motion to Sever

■ We review a denial of a motion to sever for an abuse of discretion. *United States v. Gonzales*, 749 F.2d 1329, 1333 (9th Cir.1984). The district court's ruling is rarely disturbed, *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir.), *cert. denied*, 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980), because the defendant must demonstrate that the joint trial "was so manifestly prejudicial as to require the trial judge to exercise his discretion in but one way, by ordering a separate trial." *United States v. Abushi*, 682 F.2d 1289, 1296 (9th Cir.1982). To obtain severance based on antagonistic defenses, defendants must show more than that they will blame each other; they must show that "the acceptance of one party's defense will preclude the acquittal of the other party...." *United States v. Ramirez*, 710 F.2d 535, 546 (9th Cir.1983). "Clearly, this is not an easy burden to meet." *Escalante*, 637 F.2d at 1201.

Bustamante and Soto-Leal claim that denial of severance prejudiced them because Valles' post-arrest statements implicated them. They rely upon *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). They further claim that Valles' defense that he was "a mere helper" was irreconcilably antagonistic with Bustamante's "mere presence" defense and Soto-Leal's defense that the prosecution failed to establish the crime's requisite. Both claims boil down to the assertion that a carefully redacted version of Valles' admission that he "helped" move marijuana in the garage implicated his co-defendants. Ultimately, the admissions

simply fail to incriminate anyone except Valles.

All parties to the trial recognized the inculpating potential of Valles' admissions in their original form. Thus, the trial court conditioned receipt into evidence on deleting all mention of Bustamante and Soto-Leal, as well as eliminating the word "help," which might have pointed primary managerial responsibility to unnamed persons also on trial. Before he admitted the redacted statement, the trial judge carefully directed the jury to confine its use of the statement to consideration of Valles' guilt only.

■ One slip did occur: in the course of cross-examining the DEA agent who heard Valles' confession, the trial judge inadvertently asked a question which led to the agent's recollection that Valles said he just "wanted to be helpful." However, in the context of a multiple-defendant trial and a welter of evidence implicating unindicted persons, this comment did not point the finger at Bustamante and Soto-Leal. Thus, they were not so prejudiced by joint trial as to meet the high standard required for severance. *See Gonzales*, 749 F.2d at 1334, (redaction substituting "the other man" for the co-defendant's name did not implicate the co-defendant or violate his sixth amendment rights).

■ Likewise, the defendants' proffered defenses were not irreconcilably antagonistic. *See Ramirez*, 710 F.2d at 546. The presence of other co-defendants, whose guilt the government diligently sought to prove, as well as implicated third parties not on trial, meant that acceptance of Valles' "helping" defense did not necessarily endanger Soto-Leal's and Bustamante's acquittal. Moreover, in Soto-Leal's case in particular, the evidence against him was so overpowering that nothing Valles said to the officers could have prejudiced his defense.

### Soto-Leal's Conviction of Conspiracy

■ The principle that a judgment acquitting all but one co-conspirator in a joint trial requires acquittal of the remain-

ing defendant on the conspiracy charge represents a limited exception to the rule that inconsistent verdicts may stand. *See Lubin v. United States,* 313 F.2d 419, 422–23 (9th Cir.1963). The rationale for this so called "rule of consistency" is that "the acquittal of all but one of the conspirators signifies that the jury found no agreement to act, and the remaining conspirator cannot have [conspired with himself] since '[c]onspiracy requires a plurality of actors....'" *United States v. Wright,* 742 F.2d 1215, 1224 (9th Cir.1984) (quoting *Lubin,* 313 F.2d at 423). This court has recognized two exceptions to the *Lubin* rule: (1) when an indictment refers to unindicted or unnamed persons and the government presents "substantial evidence that the defendant conspired with those persons," *Wright,* 742 F.2d at 1224; *see also United States v. Patterson,* 678 F.2d 774, 781 (9th Cir.) *cert. denied,* 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982); (2) when the co-defendant's escape from the conspiracy charge is not equivalent to an acquittal on the merits, as when the jury is hung, *United States v. Sangmeister,* 685 F.2d 1124, 1126–27 (9th Cir.1982), or when a jury convicts one conspirator of a lesser included offense in "a legitimate exercise of jury lenity," *Wright,* 742 F.2d at 1225 (younger accomplice convicted of conspiring to possess lesser amount of marijuana than his two seasoned confederates; conviction sustained).

■ On the basis of the consistency rule, Soto-Leal contends that his conspiracy conviction should have been vacated once the district court dismissed the conspiracy count against four of his co-defendants and the jury acquitted the other two of conspiracy. We agree.

■ Although the original indictment referred to unindicted co-conspirators "whose names are known and unknown to the grand jury," the government failed to produce "substantial evidence" that Soto-Leal conspired with those persons. To avoid the deficiency in its evidence against unindicted parties, the government argues that the district court erroneously granted

motions for judgment of acquittal in favor of two of the indicted conspirators, Villa-Tapia and Cruz-Sinotez. Had the charges against these defendants gone to the jury, Villa-Tapia and Cruz-Sinotez may have been found guilty of conspiracy, but acquittal constituted a final judgment on the merits and foreclosed speculation by this court about the sufficiency of evidence to convict them. Finally, although the jury convicted Bustamante and Valles on one of the possession counts, this represented a separate count in the original indictment and did not constitute a lesser offense included in conspiracy. Because Soto-Leal's conspiracy conviction violates the *Lubin* rule, it must be vacated. Moreover, because the district court ordered that Soto-Leal's three sentences should run consecutively, one of his consecutive sentences must be vacated.

### The Sufficiency of the Evidence to Convict Bustamante

■ The standard of review governing the denial of a motion to acquit for insufficient evidence is whether a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *See, e.g., United States v. Murray,* 751 F.2d 1528, 1534 (9th Cir.1985); *United States v. Cusino,* 694 F.2d 185, 187 (9th Cir.1982), *cert. denied,* 461 U.S. 932, 103 S.Ct. 2096, 77 L.Ed.2d 305 (1983). Bustamante submits that the evidence against him only indicated his association with other charged defendants and his proximity to the crime; he argues that the evidence failed to show that he actually or constructively exerted dominion over the marijuana or that he aided and abetted the possession of others. *See United States v. Batimana,* 623 F.2d 1366, 1369–70 (9th Cir.), *cert. denied,* 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980).

■ Under the deferential standard applied to denials of motions to acquit, sufficient evidence existed to convict Bustamante of possession. The following evidence clearly indicated Bustamante's knowledge of, and participation in, the distribution scheme: (1) Hauser observed him

standing outside the scene of his arrest in conversation with Soto-Leal; (2) when the police entered the house, they again discovered him with Soto-Leal; (3) the residence—emptied of beds, piled high and reeking with marijuana, and located on an out of the way, camouflaged plot of land—was obviously converted to exclusive use as a contraband warehouse; (4) while Bustamante was there, officers observed apparent confederates in the act of preparing to haul away a shipment; and (5) his fingerprints were found on items discovered at two other marijuana warehouses.

The cases that Bustamante cites, particularly *Batimana* and *United States v. Weaver,* 594 F.2d 1272 (9th Cir.1979), involved small amounts of drugs found on the person of a co-defendant. These cases are not applicable here where the sheer volume of the drugs and elaborate arrangements for their storage and transportation supports a jury finding that the defendant knowingly collaborated in possessing contraband. *See United States v. Silla,* 555 F.2d 703 (9th Cir.1977); *accord United States v. Castro,* 723 F.2d 1527, 1533–34 (11th Cir.1984); *United States v. Blasco,* 702 F.2d 1315, 1330–32 (11th Cir.1983). Accordingly, Bustamante's conviction is affirmed.

The appellants raise a number of other objections to rulings made in the trial court. None justifies comment, much less reversal.

With the exception of Soto-Leal's conspiracy count, upon which the judgment must be vacated, the judgments appealed from are in all other respects affirmed.