UNITED STATES of America, Plaintiff-Appellant,

v.

Sylvester ANDREWS, Defendant-Appellee.

No. 87-3109.

United States Court of Appeals, Eleventh Circuit.

Aug. 4, 1988.

Thomas E. Morris, Ernst D. Mueller, Asst. U.S. Attys., Jacksonville, Fla., Patty Merkamp Stemler, U.S. Dept. of Justice, Appellate Section/Criminal Div., Washington, D.C., for plaintiff-appellant.

Rosemary T. Cakmis, H. Jay Stevens, Federal Public Defenders, Jacksonville, Fla., for defendant-appellee.

Before RONEY, Chief Judge, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HATCHETT, ANDERSON, CLARK, EDMONDSON and COX[*], Circuit Judges.

[*] COX, Circuit Judge, became a member of the court after this appeal had been orally argued but has participated in this decision after listening to a recording of oral argument. See Eleventh Circuit Rule 34–4(g).

1. Count One of the indictment charged as follows: "In or about early August, 1986, ... in the Middle Judicial District of Florida, [Ford and Andrews] ... did unlawfully ... combine, conspire, confederate and agree together with each other to distribute cocaine" in violation of 21 U.S.C. sections 841(a)(1) and 846. The jury found Andrews guilty, and Ford not guilty, un-

EDMONDSON, Circuit Judge:

This case concerns an inconsistency between jury verdicts finding one alleged co-conspirator guilty and the other not guilty in a joint trial. The indictment charged that defendant-appellee Sylvester Andrews and his co-defendant Robert Ford "did ... conspire ... together with each other to distribute cocaine." When Andrews and Ford were tried together, the jury found Andrews guilty of conspiracy while finding Ford not guilty.[1] The district court then granted Andrews' motion for a judgment of acquittal based upon *Herman v. United States*, 289 F.2d 362 (5th Cir.1961),[2] in which we held that "where all but one of the charged conspirators are acquitted, the verdict against the one will not stand." *Id.* at 368. A panel of this Court affirmed Andrews' judgment, stating that "[w]hile we think the full court may wish to reconsider *Herman* and its progeny, we are, for now at least, overcome by precedent." *United States v. Andrews*, No. 87–3109, at 7 (11th Cir. Oct. 27, 1987) [833 F.2d 1019 (table)] (unpublished, non-argument calendar opinion). The panel's opinion has been vacated by the full Court; we now overrule *Herman* and reverse Andrews' judgment of acquittal.

## NO CONSTRUCTIVE AMENDMENT

As a preliminary matter, before revisiting the issue in *Herman*, we address a separate question raised by Andrews. The indictment in this case charged that Ford and Andrews "did ... conspire ... together with each other to distribute cocaine"; no reference was made to other co-conspirators, named or unnamed. At trial, the district court gave a standard jury instruc-

der this count. Count Two charged that Ford and Andrews "did ... distribute and cause to be distributed a quantity of cocaine", "on or about August 7, 1986," in violation of 21 U.S.C. section 841(a)(1) & 18 U.S.C. section 2. Both Ford and Andrews were found not guilty under this count.

2. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

tion on conspiracy law. The instruction read, *in part,* as follows:

> In order to establish a conspiracy offense, it is not necessary for the government to prove that all of the people named in the indictment were members of the scheme or that those who were members had entered into any formal type of agreement.
>
> ... What the evidence in the case must show beyond a reasonable doubt is, first, that two or more persons in some way or manner came to a mutual understanding to try to accomplish a common and unlawful plan as charged in the indictment;
> ...

> . . . . .

> Now, a government agent, such as a confidential source or a police officer, cannot be a co-conspirator inasmuch as he is working for the government. Accordingly, in order to find one or both of the defendants guilty of the crime of conspiracy, you must find that each of them conspired with someone other than a government agent.

Record, vol. 2, at 289–91. Andrews contends that these isolated statements of the district court constructively "amended" the indictment in violation of his due process rights. *See Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). According to Andrews, this supposed amendment would have allowed the jury to convict him of conspiracy with someone other than Ford.

 Because Andrews raised no objections to the supposedly improper jury instructions at trial, we review his claim under the "plain error" standard. *See* Fed. Rule Crim. Proc. 52(b). We examine the district court's instructions to ascertain whether they "so modifie[d] the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the grand jury's indictment." *United States v. Johnson,* 713 F.2d 633, 643 (11th Cir.1983), *cert. denied,* 465 U.S. 1081, 104 S.Ct. 1447, 79 L.Ed.2d 766 (1984). To justify reversal of a conviction, the court's instructions, viewed in context, must have expanded the indictment "either literally or in effect." *See id.*

 In its directions to the jury, the district court read the indictment and repeatedly linked the instructions to the indictment.[3] Likewise, the court described the crime of conspiracy in terms of the "defendants"—namely, Ford and Andrews—and not just "persons."[4] The jury was instructed that it "must follow all of [the court's] instructions as a whole. You may not single out or disregard any of the Court's instructions on the law." Record, vol. 2, at 284. And, in response to a question from the jury, the court chose to send the jury the whole packet of instructions along with the indictment. *Id.* at 305–11.

It is also crucial to examine the court's instructions in the light of the trial itself. The Record clearly reveals that the government's evidence and arguments targeted the alleged conspiracy between Ford and Andrews; never did the government attempt to show that Andrews conspired with some other person allegedly present at the scene of the crime.[5] The government

---

**3.** Record, vol. 2, at 283 (the jury must "find the defendants guilty of the crime charged in the indictment."); *id.* at 288 ("the indictment charges ..."); *id.* ("you will be given a copy of the indictment'); *id.* ("Count One charges that the defendant knowingly and willfully conspired together to distribute cocaine"); *id.* at 290 (the evidence must "show beyond a reasonable doubt" that "two or more persons" engaged in an "unlawful plan as charged in the indictment"); *id.* at 294 ("a separate crime or offense is charged against one or more of the defendants in each count of the indictment"); *id.* at 295 ("The defendants are on trial only for the specific offenses alleged in the indictment").

**4.** Record, vol. 2, at 283; *id.* at 288; *id.* at 291; *id.* at 294; *id.* at 295.

**5.** In district court, Andrews never contended that the government did otherwise. In his "Motion for Judgment of Acquittal," Andrews acknowledged that "[t]he only other persons Mr. Andrews arguably could have conspired with are 'Git' and Carlton Smith. Nonetheless, the Government has never alleged—not in the pleadings nor in argument at trial—that Mr. Andrews conspired with anyone other than Mr. Ford." Record, vol. 1, no. 85, at 3. Again, on appeal, Andrews admits that "the prosecutor did not argue Andrews conspired with anyone other than Ford", although "the prosecutor referred to

called no witnesses—other than the government informant—who arguably could have participated in the drug deal.[6] In fact, at trial Andrews and Ford—*not* the government—argued that other persons were present and could have been involved in the deal.[7]

In the seminal case of *Stirone v. United States*, the Supreme Court pronounced the "rule that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone*, 361 U.S. at 215–16, 80 S.Ct. at 272; *see also id.* at 217, 80 S.Ct. at 273 ("a court cannot permit a defendant to be tried on charges that are not made in the indictment against him."). The "amendment" in *Stirone* occurred when the district court gave an instruction, over defendant's objection, that expanded the charge to include not only sand but steel shipments, *and* the government offered evidence of both. *See id.* at 214–15, 80 S.Ct. at 271–72. The Supreme Court concluded that, "While there was a variance in the sense of a variation between pleading and proof, that variation here destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury." *Id.* at 217, 80 S.Ct. at 273.

No such amendment occurred in the instant case. The government never argued

anything other than a conspiracy between Ford and Andrews. The district court's instructions, although perhaps ambiguous in part,[8] did not impermissibly expand the scope of the indictment.[9] Andrews was not tried for an offense different from the offenses alleged in the indictment. The *Herman* issue is properly before us.

## HERMAN v. UNITED STATES

In *Herman*, defendant-appellant George Herman and several co-defendants were indicted for conspiracy to ship and to receive stolen goods. *Herman*, 289 F.2d at 365. At their joint trial, the jury found Herman guilty and found his co-defendants not guilty. *Id.* On appeal the *Herman* Court noted that "[a] conspiracy cannot be committed by a single individual acting alone; he must act in concert with at least one other person." *Id.* at 368. From this irrefutable proposition we made a precipitous leap: "where all but one of the charged conspirators are acquitted, the verdict against the one will not stand." *Id.* Subsequent decisions of this Court have severely limited *Herman's* reach, and we have never actually used it to reverse another conviction.[10] Still, until today the whole court had not been called upon to revisit the precise issue in *Herman*, which involved the acquittal of all but one jointly charged, jointly tried co-conspirators.

---

the standard jury instruction to the effect that a conspiracy requires 'two or more persons' to have a mutual, unlawful understanding." Brief of Appellee Sylvester Andrews on Rehearing En Banc, at 16.

**6.** As we have already noted, the district court gave an explicit instruction that "in order to find one or both of the defendants guilty of the crime of conspiracy, you must find that each one of them conspired with someone *other than* a government agent." Record, vol. 2, at 291 (emphasis added).

**7.** *See, e.g.,* Record, vol. 2, at 239–45 (closing argument of Andrews' attorney); *id.* at 254–56 (closing argument of Ford's attorney).

**8.** Ambiguity does not necessarily mean that an alteration of the indictment occurred. And, "[a]s the law of this Circuit makes clear, it is not sufficient simply to demonstrate that an instruction had the potential to confuse a jury." *United States v. Pruitt*, 763 F.2d 1256, 1260 (11th

Cir.1985), *cert. denied,* 474 U.S. 1084, 106 S.Ct. 856, 88 L.Ed. 896 (1986).

**9.** Nor do we perceive that a variance occurred such as to prejudice the substantial rights of Andrews. *See United States v. Figueroa*, 666 F.2d 1375, 1379 (11th Cir.1982) (distinguishing a "constructive amendment" from a "simple variance.")

**10.** *See, e.g., United States v. Mosquera*, 779 F.2d 628, 630 (11th Cir.1986) (a single conviction will stand so long as the indictment alleges that the defendant conspired with others "known and unknown" and sufficient evidence supports the conviction); *United States v. Irvin*, 787 F.2d 1506, 1512–13 (11th Cir.1986) (*Herman* does not apply when some or all of the alleged co-conspirators were acquitted in a separate trial). Several opinions have strongly questioned the current validity and correctness of *Herman*. *See, e.g., id.* (citing *United States v. Espinosa-Cerpa*, 630 F.2d 328 (5th Cir.1980)).

A long line of United States Supreme Court precedent provides that "inconsistent jury verdicts among multiple defendants tried together on essentially the same evidence do not provide grounds for overturning an otherwise valid jury verdict which has adequate evidentiary support." *United States v. Irvin*, 787 F.2d 1506, 1512 (11th Cir.1986) (criticizing *Herman*). *See, e.g., Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943); *United States v. Powell*, 469 U.S. 57, 63, 105 S.Ct. 471, 475, 83 L.Ed.2d 461 (1984). Thus, the Supreme Court has stated that "[i]nconsistency in a verdict is not a sufficient reason for setting it aside. We have so held with respect to inconsistency between verdicts on separate charges against one defendant, ... and also with respect to verdicts that treat codefendants in a joint trial inconsistently." *Harris v. Rivera*, 454 U.S. 339, 345, 102 S.Ct. 460, 464, 70 L.Ed.2d 530 (1981) (citing *Dunn* and *Dotterweich*).[11]

Recently, the Supreme Court reaffirmed that "there is no reason to vacate [a criminal defendant's] conviction merely because the verdicts cannot rationally be reconciled." *Powell*, 469 U.S. at 69, 105 S.Ct. at 479. Citing *Dunn*, the *Powell* Court stated that "where truly inconsistent verdicts have been reached, '[t]he most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.'" *Id.* at 64, 105 S.Ct. at 476 (quoting from *Dunn*, 284 U.S. at 393, 52 S.Ct. at 190). The Court discussed three reasons for "insulating" jury verdicts from attack on "inconsistency" grounds—"the Government's inability to invoke review, the general reluctance to inquire into the workings of the jury, and the possible exercise of lenity." *Id.*, 469 U.S. at 69, 105 S.Ct. at 479. Thus, "with few exceptions, ... once the jury has heard the evidence and the case has been submitted, the litigants must accept the jury's collective judgment." *Id.* at 67, 105 S.Ct. at 477.[12]

■ Upon reconsideration of the consistency issue as a full Court, we overrule *Herman*.[13] Consistent verdicts are unrequired in joint trials for conspiracy: where all but one of the charged conspirators are acquitted, the verdict against the one can stand. The compelling rationale of *Dunn* and its progeny, including *Powell*, brings us to this conclusion. Andrews urges us to view the jury's verdict in favor of Ford as a finding that no conspiracy existed between Andrews and Ford. There are, however, explanations for this inconsistency that have nothing to do with whether Andrews actually conspired with Ford to commit a crime. It is just as likely that the admit-

11. For general background on the "rule of consistency", see Comment, *The Unnecessary Rule of Consistency in Conspiracy Trials*, 135 U.Pa.L. Rev. 223 (1986).

12. None of the "exceptions" noted by the Supreme Court in *Powell*, 469 U.S. at 67, 69 n. 8, 105 S.Ct. at 477, 479 n. 8, even remotely applies to the instant appeal.

13. The district court correctly determined that *Herman* controlled its decision to acquit Andrews. Likewise, in affirming Andrews' judgment of acquittal, our panel "recognize[d] that the inconsistent verdicts reached in *Powell* differ conceptually from the 'inconsistency' that underlies this appeal; so *Herman* was not overruled by *Powell* and *Herman* continues to bind us when 'all but one of the charged conspirators are acquitted....'" *Andrews*, No. 87-3109, at 5–6 (quoting *Herman*, 289 F.2d at 368). Absent a clear, contrary holding by the Supreme Court, our panel and the district court adhered to our

usual policy and considered themselves bound by *Herman*.

In *Powell*, the Supreme Court upheld a jury verdict that found the defendant-appellant guilty of using the telephone to facilitate a felony, yet innocent of the predicate felony. *Powell*, 469 U.S. at 60, 105 S.Ct. at 474. The instant case differs conceptually from *Powell* because Andrews was found guilty under a conspiracy charge that named only him and one other co-defendant, Ford, who was found not guilty. *Cf. Dotterweich*, 320 U.S. at 279, 64 S.Ct. at 135 (affirming conviction under verdict finding the president of a corporation guilty of introducing adulterated or misbranded drugs into commerce, but acquitting the corporation of the same charge); *Harris*, 454 U.S. at 340–48, 102 S.Ct. at 462–66 (denying relief to habeas petitioner who was convicted in state court in joint trial even though petitioner's three co-defendants—who were found not guilty—allegedly participated in the same burglary).

tedly inconsistent verdicts in this case are "the result of mistake, or lenity, and therefore [they] are subject to the *Dunn* rationale." *Powell*, 469 U.S. at 68, 105 S.Ct. at 479. Under the circumstances, "the best course to take is simply to insulate jury verdicts from review on this ground." *Id.* at 69, 105 S.Ct. at 479.[14]

Our holding today leaves criminal defendants with substantial protection. As the Supreme Court noted in *Powell*, "a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts. This review should not be confused with the problems caused by inconsistent verdicts." *Id.*, 469 U.S. at 67, 105 S.Ct. at 478.

Enough evidence of a conspiracy between Andrews and Ford exists to support the jury's verdict against Andrews. The testimony of a government informant, a police officer, and a detective implicated the two co-defendants in the sale of cocaine which formed the basis of the indictment in this case. Although Andrews attacks the credibility and accuracy of the government witnesses' testimony, the evidence certainly "could support [a] rational determination of guilty beyond a reasonable doubt." *Id.* (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942)).

Accordingly, we REVERSE the district court's judgment of acquittal. We remand the case so that the district court can reinstate Andrews' conviction under Count One (the conspiracy charge) and so that sentencing can take place.[15]

---

14. It is noteworthy that the United States Court of Appeals for the Ninth Circuit recently has rejected its own traditional "inconsistent jury verdict" rule as it pertains to conspiracies. The court stated as follows:

 Because of the [*United States v. Powell*] decision, the broad language from [*Lubin v. United States*, 313 F.2d 419, 422–23 (9th Cir. 1963)] to the effect that the acquittal of all but one of the alleged co-conspirators requires the acquittal of the remaining defendant can no longer be relied upon.

*United States v. Valles-Valencia*, 823 F.2d 381, 382 (9th Cir.), *modifying* 811 F.2d 1232 (9th Cir.1987). Because they perceived the significance of *Powell* to be so clear and powerful, the *Valles-Valencia* panel even rejected the need for an *en banc* hearing before overruling the circuit's precedent. *Id.*

15. We believe that Judge Clark's view of the Record—especially his transcript of the tape recording—invades the jury's province as factfinder and, more important, is mistaken. The following facts are undisputed. The jury instructions—to which there was no objection—told the jury that "the defendants are on trial only for the specific offenses alleged in the indictment." Andrews was indicted for conspiring only with Ford. The government argued for and introduced evidence of the Andrews-Ford conspiracy. Although on cross-examination the government, seeking to impeach Andrews' story that others were involved, asked questions about his direct testimony, the government never argued that Andrews conspired with someone other than Ford or that Andrews could be convicted for conspiring with someone other than Ford. From these facts, we conclude that Andrews was tried for conspiring with Ford.

These facts make our case different from the cases cited by Judge Clark, including *United*

*States v. Salinas*, 654 F.2d 319 (5th Cir. Unit A 1981), the case upon which he relies most heavily. In *Salinas*, Salinas was charged in the indictment with aiding and abetting a specific bank president, Woodul, in the misapplication of bank funds. At trial, *no evidence linked Woodul to the improper bank loan.* Put differently, no evidence supported the offense as charged in the indictment. The evidence showed that the aided and abetted person was actually another bank officer, Nance. The trial judge—faced with this difficulty—simply charged the jury that, if Salinas aided any bank officer, Salinas could be found guilty. A Fifth Circuit panel concluded that Salinas had not been tried and convicted for the same offense for which he had been indicted. We accept *Salinas* as precedent, but this case is unlike *Salinas*. In this case, evidence supported the offense charged in the indictment, and the trial judge repeatedly tied his jury instructions to the specific crime as charged in the indictment. For a case more similar to ours and rejecting a constructive amendment claim, see *United States v. Ylda*, 653 F.2d 912 (5th Cir. Unit A 1981).

On the *Herman* issue, Judge Clark says that this case is controlled by *Hartzel v. United States*, 322 U.S. 680, 64 S.Ct. 1233, 88 L.Ed. 1534 (1944). But, *Hartzel* cannot control this case because *Hartzel* is not an inconsistent *jury verdict* case. In *Hartzel*, the "only co-conspirators of petitioner named in the indictment" had their convictions set aside *by judges* on the ground of insufficient evidence. The Supreme Court did not address the significance of an acquittal of co-conspirators by a jury where the evidence would have allowed a verdict of guilty. Here, the trial judge found enough evidence of conspiracy to let the case against both defendants

CLARK, Circuit Judge, dissenting:

The majority opinion is contrary to Supreme Court and circuit precedent. As I shall demonstrate, the district court in its instructions constructively amended the indictment charging Andrews with conspiracy only with Ford, contrary to *Stirone*. In scuttling the long-standing precedent in *Herman v. United States*, 289 F.2d 362 (5th Cir.1961), our court fails to understand that the rule governing inconsistent jury verdicts does not apply to the facts of this case, which is controlled by *Hartzel v. United States*, 322 U.S. 680, 64 S.Ct. 1233, 88 L.Ed. 1534 (1944). Consequently, I cannot agree.

## I. Background

It is virtually impossible to relate the facts in this case with any clarity because, without even addressing the disputes raised by the defense, the record reveals a number of contradictions and puzzling descriptions of the transaction in question. It is undisputed that informant Charles Wright asked Sylvester Andrews to locate some cocaine, and Andrews told Wright he could. It is also undisputed that Wright then approached Lieutenant James Bradley of the Palatka, Florida Police Department with this information; offered to act as an informant; and was fitted with a monitor so as to record the transaction with Andrews. Finally, there can be no doubt that Wright did obtain some cocaine in and record on tape a transaction at which Andrews was present. Beyond these facts, however, what really happened in this case remains something of a mystery.

Wright, the government informant, testified that sometime on August 7, 1986, he asked Andrews where he might obtain some cocaine. Andrews told Wright that Robert Ford had some. Wright then told Andrews that he would go get some money and return later. Record, Vol. III at 42. From there, Wright went to Lieutenant Bradley's office and offered to act as an undercover agent in purchasing the cocaine. Bradley searched Wright for drugs and money, fitted him with a microphone around his waist and a transmitter around his ankle, gave him $50, and instructed him on the route by which he should return to the scene. Wright then headed for the scene on foot. Lieutenant Bradley, in an unmarked car, followed Wright, and a second detective, Officer Carnell Grayer, set out to survey the area and see if Andrews was still around. *Id.* at 3–5.

According to Wright's testimony on direct examination, when he arrived at the corner of 11th and Madison Streets, Andrews crossed the street to meet him. Wright told Andrews he wanted $40 worth of rock cocaine. When Andrews asked Wright to cross the street with him, Wright said he did not want to do any dealing across the street. *Id.* at 44. Andrews agreed to go get the cocaine by himself and left. Andrews then walked across and up 11th Street to Ford, who was standing in front of the closed Blue Diamond Bar, and the two disappeared behind the building. Soon thereafter, Andrews and Ford emerged from behind a building adjacent to the Blue Diamond and came across the street. Ford pulled several pieces of cocaine out of his pocket and held them out. Wright pointed to the ones he wanted. *Id.* at 45. Andrews picked them out of Ford's hand and gave them to Wright. Wright then handed the $50 bill to Andrews, who in turn gave it to Ford. Wright said, "I need some change," and Ford, without saying anything,[1] reached in his pocket and handed Wright a $10 bill. *Id.* at 46. According to Wright, Ford said nothing during the transaction other than, "What you need?" *Id.* at 50. Wright also testified that during the transaction a man named Carlton Smith came up and said something

---

go to the jury, and we have found sufficient evidence to support a guilty verdict against Ford (had the jury found him guilty) or Andrews or both. *Powell* teaches us that a not-guilty verdict for Ford is not the same thing as a finding of insufficient evidence to allow a conviction.

1. Later in his direct testimony, Wright testified that Ford did say something: "I got some change." Record, Vol. III at 57. This statement cannot be heard on the tape.

to the effect of, "I know what you are doing."[2] *Id.* at 48.

At this point, at the end of Wright's testimony on direct examination, the government played for the jury the tape of the transaction. Many parts of the recording were unintelligible, but it is generally agreed that the recording consists of two identifiable sections. In the first section, Wright has a discussion with Andrews about purchasing the cocaine, and Andrews apparently leaves to go get it. In the second, beginning after Andrews returns, it would appear that the cocaine changes hands. *See id.* at 56–57. The following is a reproduction of those parts of the tape that can be heard, and understood, with annotations to reflect the points at which the various speakers or their statements are uncertain. Fully aware that my role is not that of the trier of fact, I am nonetheless convinced that there is no way to engage in a meaningful discussion of the case without setting forth the general flow[3] of the conversation.

[UI] = Unintelligible

*Wright:* My name is Charles Wright. [UI]

[Break in transmission]

*Andrews or Wright:*—and Jitt [UI] good or either, uh, the weight's good, man.

*Wright:* Shit, man, I don't feel like spendin' my money if the weight ain't good.

*Andrews:* Hey, I'm tellin' you what's the deal; I already talked to [UI].

*Wright:* See, I don't wanna go up on the street no more.

*Andrews:* Man, I'll look for you, man.

*Wright:* All right, you bring him to me.

*Andrews:* O.K. That's good [UI].

*Wright:* Can you do that?

*Andrews:* Yeah.

*Wright:* Thanks.

*Andrews:* How much did you wanna get?

*Wright:* Forty dollars, man.

*Andrews:* All right, brother.

*Wright:* I ain't got but fifty damn [UI].

*Andrews:* [UI]

*Wright:* See, I don't wanna go up on the street [UI].

*Andrews:* All right, you give me forty or half the money [UI] forty dollar piece—

*Wright:* Hell, bring him, shit, tell him to come over back here and bring the shit. I don't want anybody shittin' me. I just don't wanna be shittin [UI].

*Andrews:* All right, well, you know, [UI].

[Plane flying overhead]

*Wright:* [UI]

*Andrews:* [UI]

*Wright:* [UI]

*Andrews:* [UI]

*Wright:* I'm dealin' with him on the corner. I ain't dealin' with him over there. [UI] Godmother used [UI] I ain't fuckin' with him in the street.

*Andrews:* [UI]

*Wright:* Yeah, I'll wait right there.

*Andrews:* [UI]

[Absence of conversation—street noise]

*Wright:* James, give me a cigarette, partner. [Street noise] Hang loose, Lieutenant. Whew. [Heavy static] Hang loose, Lieutenant. [UI]

**2.** As soon as Carlton Smith's name was mentioned, defense counsel lodged an objection, claiming that the government had violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to provide any information concerning Carlton Smith. Voir dire conducted out of the jury's hearing revealed that Wright had mentioned the fact that one of the taped voices was Smith's to Lieutenant Bradley only the day before trial, and the government attorney indicated that he had learned of Smith's presence on the scene only the morning of trial. The district court ruled that the government had been under no obligation to identify and provide information concerning Smith, as Smith was not going to be called as a witness.

**3.** I am also more than aware that my "translation" of the conversation may be inaccurate. My purpose here, however, is less to convey the precise content of the conversation than to allow the reader to place the statements and the inconsistencies of the government's case into context.

[Several minutes' absence of conversation]

*Andrews:* Ain't got but four dimes, man. Here you go. Oh, man [uncertain from testimony] got one from Carlton. He's traveling, man [uncertain from testimony] look out.

[UI]

*Ford or Smith:* For what?

*Andrews:* You got some change?

*Ford or Smith:* For what?

*Andrews:* Fifty. [pause] Give [uncertain pronoun from testimony] a dime, Carlton.

*Smith:* Hey man, I know what's happenin' man. Let me have [UI] damn [UI] freedom, man. I know I could never get sixty [UI] forty.

*Andrews:* Let me talk to you, brother. [UI] Where you going with that? Wanna smoke [UI] dime.

*Wright:* Got it. Got it, Lieutenant. Huh?

[Transmission off]

[Transmission on]

[Transmission off]

Record, Def. Exh. 1.

On cross examination, defense counsel focused on the contents of the tape, and Wright's story changed somewhat. Wright testified that Ford's only statement was not, as he had said earlier, "What you need?" Ford could also be heard, twice, saying, "For what?" *Id.* at 95, 99. And while maintaining that Ford did say, "What you need?", Wright acknowledged that that statement could not be heard on the tape. *Id.* at 98. In addition, Wright indicated that Carlton's presence was more significant than the direct testimony had suggested. Andrews had spoken Carlton's name at least twice, the first time saying, "Did you get one from Carlton?" and the second time, "Give me a dime, Carlton." *Id.* at 81–83. Wright also testified that "Jitt"[4] was not a nickname for either Andrews or Ford, *id.* at 69–70, and that he had never told Lieutenant Bradley that it was. *Id.* at 92.

Lieutenant Bradley testified that he left the police station after Wright and attempted to find a position where he could see the transaction, but could not get close enough because "in that area I can't get up there with my car." *Id.* at 26. As a result, he was unable to watch the transaction, but he did monitor it through Wright's microphone from about a block away. *Id.* at 6. Bradley also testified that as he drove to his position, he saw Ford standing in front of the Blue Diamond Bar. *Id.* at 17. Bradley was familiar only with Wright's voice, *id.* at 8, so he did not identify the other speakers on the tape. He did state that Wright had told him "Jitt" was Andrews' nickname. *Id.* at 195.

Officer Grayer was also unable to see the transaction take place. *Id.* at 122, 124. His assignment was to survey the area, staying close enough nearby in case Wright needed some assistance. *Id.* at 105, 118. Grayer did, however, see several of the principals as he drove around. Before Wright arrived on the scene, Grayer saw Ford and Andrews talking on the corner of 11th and Madison. *Id.* at 108–09. Three to five minutes later, he saw Ford standing further north on 11th Street in front of the Blue Diamond Bar. *Id.* at 109. Five to ten minutes later, he again saw Andrews on the corner of 11th and Madison, this time talking with Wright. *Id.* at 109–10. Grayer never saw Wright, Andrews, and Ford standing together. *Id.* at 110.

Grayer, unlike Bradley, was able to identify the voices on the tape, because he had known Wright, Ford, Andrews, and Smith for some time. *Id.* at 111–12, 114. Grayer testified that the first person talking, and referring to "Jitt," was Wright. *Id.* at 112. He further testified that Ford was the voice saying, "For what?" *Id.* at 114. He noted that Andrews informed Wright that Smith was traveling with Andrews as a lookout, *id.* at 117, and acknowledged that Andrews told Smith to "give him a dime," *id.* at 130, although Grayer was uncertain

---

**4.** The majority refers to this person as "Git." I use the spelling "Jitt," because that is the spelling in the trial transcript, but it is clear that both the majority and I are referring to the same person.

whether that reference was to cocaine or to cash. *Id.* at 127, 132. Finally, Grayer testified that he was not familiar with who "Jitt" was. *Id.* at 117.

After a defense motion for acquittal on all four counts—the two against Andrews and the two against Ford—was denied, Sylvester Andrews took the stand. Andrews admitted that he had told Wright earlier in the day that he could get some cocaine from Jitt. *Id.* at 159–60. According to Andrews, he and Wright regularly bought and used drugs together. *Id.* at 159. When Wright returned, Andrews said, he spoke with Wright about the deal and left to go find Jitt. *Id.* at 160–61. Jitt was gone, however, and Andrews reappeared to find that Wright was in the middle of a deal with Smith. *Id.* at 162. Because he hoped to use some of the drugs Wright was purchasing, Andrews became involved in the transaction, complaining to Smith that he owed Wright some change. *Id.* at 163–64. When Smith said "For what?," Wright said, "Fifty." *Id.* at 163. When Smith was slow giving Wright the change from the $50 bill, Andrews said, "Give him the dime, Carlton." *Id.* at 164. To that, Smith responded to the effect of, "I know what I'm doing," "This is my business," and stop "messing with my freedom." *Id.* at 164, 176. According to Andrews, he had not seen Ford all day, and Officer Grayer was lying when he testified that he had seen Ford and Andrews together minutes before the transaction. *Id.* at 168–69. Andrews testified further that Grayer had actually driven by while Smith was giving Wright the cocaine—hence, the references to "traveling" and "look out"—and that Grayer must have known Ford was not there. *Id.* at 170.

After Andrews' testimony, the defense rested, and its motion for acquittal was denied. Some brief rebuttal testimony and closing arguments followed, and the case was submitted to the jury. Without objection, the court instructed the jury, in pertinent part, as follows:

> [A]s to Count One, you will note that the defendants are not charged in that count with violating Title 21, United States Code, Section 841(a)(1). Rather, they are charged with having conspired to do so in violation of Title 21, United States Code, Section 846.
>
> Now, Title 21, United States Code, Section 846, makes it a separate federal crime or offense for anyone to conspire or agree with someone else to do something which if actually carried out would be a violation of Section 841(a)(1) makes it a crime for anyone to knowingly distribute cocaine.
>
> So under the law a conspiracy is an agreement or kind of partnership in criminal purpose in which each member becomes the agent or partner of every other member.
>
> In order to establish a conspiracy offense, *it is not necessary for the government to prove that all of the people named in the indictment were members of the scheme* or that those who were members had entered into any formal type of agreement.
>
> Also, because the essence of a conspiracy offense is the making of the scheme itself, it is not necessary for the government to prove that the conspirators actually succeeded in accomplishing their unlawful plan. What the evidence must show beyond a reasonable doubt is, first, that *two or more persons* in some way or manner came to a mutual understanding to try to accomplish a common and unlawful plan as charged in the indictment; and, second, that the defendants knowingly and willfully became a member of such conspiracy.
>
> . . . . .
>
> ... the case of each defendant should be considered separately and individually. *The fact that you may find one or more of the defendants guilty or not guilty of any of the offenses charged should not affect your verdict as to any other offense or any other defendant.*

*Id.,* Vol. II at 289–90, 294 (emphasis added). After deliberating for some time, the jury asked the court to instruct it again on the definition of conspiracy, and the court responded by giving the jury a written copy of all the instructions. The jury ultimately

found both Ford and Andrews not guilty of distribution, Ford not guilty of conspiracy to distribute, and Andrews guilty only of conspiracy to distribute.

## II. Amendment of the Indictment

In deciding that there was no constructive amendment of the indictment here that violated *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), the majority essentially reads that case, as well as a number of Eleventh Circuit cases following it, out of existence. *Stirone* holds that a conviction cannot stand unless it can be said that the defendant was convicted solely on the charge in the indictment. *See id.* at 217, 80 S.Ct. at 273. Jury charges that raise this possibility, especially when combined with proof to support them,[5] are reversible error per se.[6] *United States v. Peel*, 837 F.2d 975, 979 (11th Cir.1988); *United States v. Salinas*, 654 F.2d 319, 323 (5th Cir. Unit A Aug. 1981), *overruled on other grounds, United States v. Adamson*, 700 F.2d 953 (5th Cir. Unit B) (en banc), *cert. denied*, 464 U.S. 833, 104 S.Ct. 116, 78 L.Ed.2d 116 (1983); *United States v. Carroll*, 582 F.2d 942, 944 (5th Cir.1978). The indictment on which Andrews and Ford were tried charged that "[i]n or about early August, 1986, at Putnam County, Florida, in the Middle Judicial District of Florida, ROBERT E. FORD and SYLVESTER ANDREWS, defendants herein, did unlawfully combine, conspire, confederate and agree together with each other to distribute cocaine." Record, Vol. I, Tab 1 at 1. Yet the instructions and the proof under which Andrews was convicted allowed the jury to find him guilty even if he conspired not with Ford, but with Carlton Smith or Jitt. The jury did exactly what the constructive amendment permitted it to do: at the same time it convicted Andrews of conspiracy, it found Ford innocent, even though the conspiracy was alleged as between only those two. For the jury verdict to make any sense, one can only conclude that the jury

convicted Andrews of conspiring with Smith or some other person. Such a verdict cannot stand in the face of *Stirone* and its progeny because Andrews was convicted of a crime other than that alleged in the indictment.

The majority insists, in labyrinthine fashion, that *Stirone* is inapplicable here because (1) the instructions here were not misleading, (2) assuming that the instructions were somewhat misleading, *Stirone* involved amendment of an indictment by both the instructions and the proof, and here there was not proof that there were co-conspirators other than Ford, and (3) assuming that some of the evidence could be taken as proof that there were other co-conspirators, it was not the government, but the defendants, who put that evidence on. I find none of these justifications supportable by anything in the record.

First, the instructions stated flatly that it was not necessary for the government to prove that all of the persons named in the indictment conspired. In the ordinary case, where many co-conspirators are named, that is clearly true. In a case where only two conspirators are alleged, however, it plainly is necessary that the government prove the participation of both, and the court should have so instructed the jury. *See United States v. Gonzalez*, 661 F.2d 488, 492 (5th Cir. Unit B Nov. 1981) (although there was evidence of possession of other drugs, there was no constructive amendment of indictment charging possession only of methaqualone where district court expressly instructed jury it could convict only on the basis of methaqualone possession). To my mind, no amount of generalized references in the instructions to "the defendants" can make up for the fact that the court instructed that "it is not necessary for the government to prove that all of the people named in the indictment were members of the scheme," and "[t]he fact that you may find one or more of the

---

5. *See infra* note 7.

6. In light of this rule—that amendments to an indictment are reversible error per se—the majority's reference to the "plain error" standard of review is essentially meaningless. Plain error

will be found if a substantial miscarriage of justice has occurred, and such a miscarriage necessarily occurs when, as is the case with reversible error per se, prejudice is presumed.

defendants guilty or not guilty of any of the offenses charged should not affect your verdict as to any other offense or any other defendant." The fact that the court gave the jury the entire instruction packet when the jury asked to be reinstructed on the definition of conspiracy renders the error all the more egregious, and does not, as the majority contends, militate against finding the instruction erroneous. It is highly likely that the jury already knew it wanted to acquit Ford, and was wondering specifically whether it could convict Andrews without convicting Ford. When the packet of instructions came in, the jury probably searched the document for an instruction that allowed it to do that, and it found at least two such instructions.

Second, it is simply absurd to claim that even if the instruction was somewhat misleading, there was no proof that Andrews conspired with someone other than Ford.[7] Andrews' remarks at the beginning of the tape are most readily construed as expressing his intention to obtain the cocaine from Jitt. Even more significantly, it is quite clear from the tape and from the testimony that Carlton Smith was involved in the transaction: all the witnesses agreed that Andrews asked Smith for a "dime," which could have meant either cocaine or money, but which clearly indicated Smith was participating in some respect. Wright never explained why Andrews would ask Smith for a "dime" if Andrews was in fact working with Ford. At one point on the tape, Andrews says something to the effect of "got one from Carlton." Officer Grayer testified that Andrews told Wright that Smith was acting as a "lookout" for him. Not only do these facts constitute evidence that permit a jury to find Andrews con-

spired with someone other than Ford, they make it more likely that the jury found Smith, not Ford, the co-conspirator.

Finally, the majority mischaracterizes the trial when it asserts that the evidence of conspirators other than Ford was put on by the defense and not by the government. Assuming that that would be reason enough to find *Stirone* inapplicable,[8] it simply is not the case. The government offered the tape into evidence, and the tape itself, as outlined above, was the most meaningful evidence that it was Smith, not Ford, with whom Andrews conspired. Furthermore, neither Andrews nor Ford put on any evidence that they conspired to *distribute* with someone other than those named in the indictment. What they argued was that Andrews conspired to commit simple possession and that Ford was not involved in the transaction in any way. Lastly, and most importantly, while it may be true that the government did not use its closing argument to assert that Andrews conspired with someone other than Ford, there are at least three different parts of the government's cross-examination of Andrews in which it brought out the possibility of co-conspirators other than Ford:

Q. So the basic thing you're disagreeing with here is you're saying that you got [the drugs] from this Carlton Smith and not from Mr. Ford?

A. I said that he got them from Carlton Smith and I didn't get any of them because he abandoned me when we got back at Bob & Dot's.

Q. *Well, did you hear yourself say on the tape about Carlton Smith, "He's traveling with me?*

---

**7.** The majority cites no cases holding that a *Stirone* violation cannot be found on the basis of instructions alone, and I am not at all certain that such a limitation is appropriate. In *United States v. Salinas,* 654 F.2d 319 (5th Cir. Unit A Aug. 1981), for example, this court stated: "An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor *or court* after the grand jury has last passed upon them." *Id.* at 324 (emphasis added). The case the majority cites in support of this proposition, *United States v. Pruitt,* 763 F.2d 1256 (11th Cir.

1985), *cert. denied,* 474 U.S. 1084, 106 S.Ct. 856, 88 L.Ed.2d 896 (1986), is completely inapplicable, as it is a due process case involving a different legal standard altogether and having nothing to do with the terms of an indictment.

**8.** Again, the majority cites no cases in support of this rather odd waiver-type proposition, and I do not believe there are any cases supporting it. To avoid belaboring my point, I would direct the reader to the passage quoted *supra* footnote 7.

A. No, sir. That's not what I said....

....

A. It was more than three people there. It was myself; there was Carlton Smith and Charles Wright, and there was a couple more people in the area.

Q. *All right. How many were participating in this transaction?*

....

Q. Isn't it a fact in the background there—isn't it Carlton saying, "Hey, give me a dime"?

A. No, sir. Because Carlton was the one producing the drugs.

Q. *Wasn't Carlton going to get a dime or thought he was going to share a dime with you for looking out?*

A. No, sir. He couldn't have thought that, because I wasn't purchasing. Charles was.

Record, Vol. III at 170, 171, 176–77 (emphasis added).

Under these circumstances, it is inconceivable that the indictment under which Andrews was charged was not constructively amended. An indictment is amended in violation of the fifth amendment "where the jury instructions 'so modif[y] the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the grand jury's indictment.'" *United States v. Lignarolo,* 770 F.2d 971, 981 n. 15 (11th Cir.1985) (quoting *United States v. Ylda,* 653 F.2d 912, 914 (5th Cir. Unit A Aug. 1981)), *cert. denied,* 476 U.S. 1105, 106 S.Ct. 1948, 90 L.Ed.2d 358 (1986). It does not matter that there might also have been evidence sufficient to convict the defendant of precisely what he was charged; the right to a grand jury indictment is violated whenever the uncharged acts *"might* have been the basis upon which the trial jury convicted." *Stirone,* 361 U.S. at 218, 80 S.Ct. at 274 (emphasis added); *see also Peel,* 837 F.2d at 980. The majority not only disregards these principles but wholly ignores cases like *United States v. Salinas,* 654 F.2d at 319, which is virtually identical to Andrews' case. In finding a constructive amendment in *Salinas,* and reversing the conviction, this court said:

> By allowing the jury to convict if it found that the principal whom Salinas aided and abetted was an officer, director, employee, or agent of the bank when the indictment charged him only with aiding and abetting a specific named individual, Woodul, the trial judge modified an essential element of the offense.

*Id.* at 324. Andrews suffered the same fate—the court allowed his conviction for participating in a conspiracy of "two *or more* persons" though he was charged of conspiring only with Ford—and yet the majority affirms his conviction.

I am aware that the evidence showed that Andrews was guilty of conspiring with someone to commit some offense, be it possession with intent to distribute or simple possession. I am also aware that Andrews would have absolutely no grounds for appeal if the government had alleged simply that he conspired with Ford and "other unknown persons." *Cf. Stirone,* 361 U.S. at 218, 80 S.Ct. at 274 ("It follows that when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, even though it may be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened."). I do not believe, however, that either Andrews' general criminal disposition or the government's inadvertence gives this court license to ignore the facts or a long line of cases finding constructive amendments under circumstances far less glaring than these. *See, e.g., id.* at 217, 80 S.Ct. at 273 (court's instruction was reversible error where it permitted jury to find that defendant interfered with interstate shipments of steel when indictment alleged only interference with interstate shipments of sand); *Peel,* 837 F.2d at 979 (court's instruction was plain error constituting constructive amendment where it permitted jury to find that defendant possessed with intent to distribute as a United States citizen rather than as a person aboard a United States vessel, as was charged in the indictment);

*United States v. Figueroa*, 666 F.2d 1375, 1379 (11th Cir.1982) (indictment unconstitutionally amended where court permitted jury to convict of air piracy by threats or intimidation even though indictment charged piracy by force and violence); *United States v. Bizzard*, 615 F.2d 1080, 1082 (5th Cir.1980) (indictment unconstitutionally amended where it charged that defendant committed bank robbery and put lives of tellers in jeopardy but conviction was for bank robbery accompanied by assault, different statutory section). Nor do I believe that the principles to which I adhere are unsound as a policy matter. Requiring that all possible co-conspirators be named or at least generally alleged prevents the government from presenting to the grand jury only selected portions of the transaction and gives the grand jury an opportunity to make a truly informed decision.

### III. The Inconsistent Verdicts

The majority decides today that a defendant can be convicted of conspiracy even though the sole co-conspirator alleged is acquitted of conspiracy in the very same trial. *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), it is said, dictates this result, for *Powell* holds that courts cannot inquire into what a jury intends when its conviction of a defendant on one count is clearly inconsistent with that defendant's acquittal on another count. I cannot agree that *Powell* should be expanded to let inconsistent conspiracy verdicts stand where one defendant is acquitted and the other convicted.[9]

9. Indeed, I find the majority's expansive reading of *Powell* ironic in light of its extremely narrow reading of *Stirone*. *See supra* part II.

10. This was a collateral attack case in which the Supreme Court was addressing the constitutionality of the issue.

11. The majority does cite *United States v. Irvin*, 787 F.2d 1506 (11th Cir.1986), in which a defendant convicted of conspiracy complained of inconsistent verdicts. However, two of Irvin's alleged co-conspirators' verdicts of acquittal were reached in a separate trial, with a different jury. This distinction is an important one, because inconsistent judgments by two different

It is true, as the majority points out, that the *Powell* Court spoke very broadly of the danger of interpreting a jury's verdict. It is also true that a number of earlier Supreme Court cases have held generally that inconsistency between verdicts returned as to a single defendant is insufficient reason to upset a conviction. Conspiracy, however, is by its nature a qualitatively different crime than any of the offenses considered in the cases on which the Supreme Court has ruled. Unlike the defendant in *Powell*, who was convicted of using the telephone to facilitate a felony, but acquitted of the felony, or the defendant in *Harris v. Rivera*, 454 U.S. 339, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981),[10] who was convicted of robbery, grand larceny, and burglary, while a co-defendant implicated by the same witness was found not guilty, or Dotterweich in *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943), who, as president of the defendant corporation, was convicted of introducing adulterated drugs into interstate commerce although the corporation itself was acquitted, and the defendant in *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), who was convicted of maintaining a nuisance by keeping liquor for sale during Prohibition, but was acquitted of possession and sale of whiskey, Andrews could legally be convicted of conspiracy only if the jury found that another person —specifically, Ford—had participated in an illegal agreement. Ford's culpability was thus an essential element of Andrews' offense, and the same cannot be said concerning the jury's acquittals in any of the cases on which the majority relies.[11] In *Powell*, for example, although the jury's verdicts appeared inconsistent factually, the convic-

groups of twelve receiving different evidence and hearing different arguments simply do not raise the inference that the convicting jury misunderstood the law before it. *See Standefer v. United States*, 447 U.S. 10, 25, 100 S.Ct. 1999, 2008, 64 L.Ed.2d 689 (1980) ("This case does no more than manifest the simple, if discomforting, reality that 'different juries may reach different results under any criminal statute. That is one of the consequences we accept under our jury system.' ") (quoting *Roth v. United States*, 354 U.S. 476, 492 n. 30, 77 S.Ct. 1304, 1313 n. 30, 1 L.Ed.2d 1498 (1957)).

tion of using the telephone to facilitate a felony did not *depend* on a finding that the felonies were committed.

In extending *Powell* to cover Andrews' situation, the majority chooses not to acknowledge conspiracy's *sui generis* status in our criminal law, a status the Supreme Court has recognized in the consistency context on at least two occasions. First, in *Hartzel v. United States*, 322 U.S. 680, 64 S.Ct. 1233, 88 L.Ed. 1534 (1944), the Court held that it was "impossible to sustain the petitioner's conviction upon ... the conspiracy count" where the trial court had set aside the convictions of the defendant's only alleged co-conspirators. *Id.* at 682 n. 3, 64 S.Ct. at 1234 n. 3. Then, in *Harris v. Rivera,* one of the inconsistency cases on which the majority expressly relies, the Court acknowledged the decision in *Hartzel* as distinguishable from its cases with respect to inconsistency between verdicts on separate charges against one defendant. 454 U.S. at 345 n. 13, 102 S.Ct. at 464 n. 13.

The majority opinion relies on no comparable judicial precedent, no policy grounds, and no sound reasoning in overruling *Herman,* in which a distinguished panel of the court, consisting of Chief Judge Tuttle and Judges Rives and Wisdom, said the following:

A conspiracy cannot be committed by a single individual acting alone; he must act in concert with at least one other person. The acquittal of one conspirator would thus be immaterial where there are several other named conspirators, or other conspirators charged but unknown to the jury. But where all but one of the charged conspirators are acquitted, the verdict against the one will not stand.

289 F.2d at 368. Andrews' case cannot be compared to the alleged precedent which the majority seeks to rely upon. The first distinction has already been pointed out in Section II, Amendment of the Indictment. Andrews was indicted for conspiring with Ford. The jury's verdict of acquittal of Ford makes it impossible to sustain a verdict against Andrews. In none of the inconsistent verdict cases relied upon by the majority, was there any inconsistency between the evidence and the verdict of guilty as is the case here.

Secondly, allowing inconsistent verdicts in conspiracy cases presents an unparalleled opportunity for the jury blatantly to treat equal participants unequally: should Andrews perceive that his punishment is just when he is convicted of agreeing with Ford but Ford is acquitted? Indeed, the injustice in this case is even more acute than it might ordinarily be. The majority asserts that the jury may have been exercising leniency toward Ford, but that is somewhat hard to imagine when Ford did not even take the stand. In the Supreme Court cases relied upon by the majority, the Court was reviewing cases in which a jury was being lenient by acquitting the single defendant of some charges while convicting him or her on others. The jury in this case was not showing lenity to Ford. Neither can it be said that the jury made a mistake. It is simply a case of no evidence against Ford and thus no evidence of a conspiracy between Andrews and Ford.

Third, conspiracy is already defined by a single element—an agreement[12] to do something illegal—that is virtually always proven entirely by circumstantial evidence. Surely some limits are necessary to keep it

---

12. The very reason conspiracy has evolved as an offense distinct from the substantive offense the conspirators agree to commit is the perceived danger of group action. As Justice Frankfurter observed in *Callanan v. United States,* 364 U.S. 587, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961),

collective criminal agreement—partnership in crime—presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal

purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crime unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.

*Id.* 364 U.S. at 593–94, 81 S.Ct. at 325; *see also* P. Marcus, *Prosecution and Defense of Criminal*

from becoming any more nebulous. *See Krulewitch v. United States,* 336 U.S. 440, 446–47, 69 S.Ct. 716, 720, 93 L.Ed. 790 (1949) (Jackson, J., concurring) ("The modern crime of conspiracy is so vague that it almost defies definition. Despite certain elementary and essential elements, it also, chameleon-like, takes on a special coloration from each of the many independent offenses on which it may be overlaid."); *United States v. Grassi,* 616 F.2d 1295, 1301 (5th Cir.) ("Conspiracy law is not a dragnet for apprehending those with criminal dispositions."), *cert. denied,* 449 U.S. 956, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980).

In sum, I would hold, in accordance with *Herman,* that a defendant cannot be convicted of conspiracy if the same jury has acquitted all of the defendant's alleged co-conspirators. I would do so not in an effort to speculate on what the jury's verdict meant, but in the interests of equal justice under the law and reserving the law of conspiracy for those situations where there truly has been group action.[13]

### IV. Sufficiency of the Evidence

Having reviewed the record in this case, I would hold that the evidence used to convict Andrews of conspiring with Ford was insufficient. I recognize that the government informant, Wright, testified that Andrews told him that he could get cocaine from Ford and that Andrews later brought Ford to Wright and the cocaine was sold. Under ordinary circumstances, this evidence would be sufficient to convict Andrews of conspiring with Ford. The cir-

cumstances, here, however, were not ordinary: Wright's description of the transaction, the only testimony implicating Andrews in a conspiracy with Ford, simply did not jibe with the conversation recorded on tape, and Wright's testimony was inconsistent on crucial points.

On a sufficiency challenge, an appellate court must analyze the evidence in the light most favorable to the government and affirm the conviction if a rational fact finder could find the defendant guilty beyond a reasonable doubt. *Tibbs v. Florida,* 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652 (1982); *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This principle, however, is subject to two limitations that are of significance here. First, if the evidence viewed in the light most favorable to the prosecution "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, then a reasonable jury must necessarily entertain a reasonable doubt." *Cosby v. Jones,* 682 F.2d 1373, 1383 (11th Cir.1982). Second, although conflicts in evidence are generally for the fact finder to resolve, *see Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), a different situation arises when the testimony of a government witness is "so completely at odds with ordinary common sense, that no reasonable person would believe it beyond a reasonable doubt." *United States v. Chancey,* 715 F.2d 543, 546 (11th Cir.1983).

Here, Charles Wright was the only witness who could testify to the particulars of

*Conspiracy Cases* 2–9 to 2–14 (1978) (when a defendant is convicted of conspiracy irrespective of whether another person actually agreed to commit a crime, "the rationale for the crime is destroyed, for there is no group danger").

13. The majority maintains (1) that inconsistency and sufficiency challenges should be recognized as distinct concepts and (2) that defendants in conspiracy cases are afforded adequate protection under the majority's decision because sufficiency challenges will still be available. While I agree with the former proposition, I cannot agree with the latter, for several reasons. First, whatever is said about the sufficiency of the evidence, the fact remains that these inconsistency situations arise only when a jury flatly rejects evidence that might well pass muster under a sufficiency challenge. Indeed, the injustice in these cases increases with the amount

of credible evidence put on against a defendant and his co-conspirator, for the greater the evidence, the more meaningful a statement the jury's verdict of acquittal becomes. Second, in refusing to address inconsistent verdicts in conspiracy cases, the court is sending a clear message that it is unconcerned with the appearance of justice. Third, conspiracy law has always been such an amorphous concept, and has been diluted over the years to such an extent, that it requires very little to cross the sufficiency threshold. It strikes me as falsely naive to refer to a sufficiency challenge in a conspiracy case as "protection." Indeed, the majority's one-paragraph, no-facts rejection of Andrews' sufficiency challenge makes this point more emphatically than any dissent ever could.

the transaction, for Lieutenant Bradley and Officer Grayer admitted that they could not see the transaction, and while both officers testified that they saw Ford in the general vicinity, neither saw Ford, Andrews, and Wright together. The tape of the transaction (according to Officer Grayer, who knew Ford personally) has Ford saying only, "For what?", and the statement seems to come from a distance. The tape also includes several statements indicating that the cocaine Wright purchased just as likely came from Carlton Smith or Jitt as from Ford: "got one from Carlton"; "Give ["him" or "me," depending on the witness] a dime, Carlton"; the reference, as Officer Grayer described it, to Smith as a lookout; and the opening remark about getting cocaine from Jitt. Were it not for Wright's testimony implicating Ford as the man with the cocaine, the evidence would fall squarely under the rule of *Cosby:* because it gave rise to equal inferences of guilt and innocence, no rational fact finder could find guilt beyond a reasonable doubt.

Wright's testimony, however, included some serious inconsistencies that render his testimony—again, the only real evidence against Andrews on the conspiracy count—unbelievable. For example, Wright testified that Ford made only one statement—"What you need?"—during the entire transaction. When confronted with the tape, Wright admitted that the statement could not be heard. Indeed, Wright admitted that he could hear Ford saying, "For what?" when asked for change. Yet only moments earlier in his testimony, Wright had said that he handed the $50 bill to Andrews, and Ford, *without saying anything*, pulled a $10 bill out of his pocket and handed it to Wright. Wright also acknowledged that Andrews could be heard

asking Smith for a dime, rendering even more questionable Wright's testimony that it was Ford who handed him the $10 bill.[14] In my view, these inconsistencies involve such crucial aspects of the transaction that they cannot be overlooked,[15] and Wright's testimony, under the authority of *Chancey*, should not be considered credible.

In sum, while I am completely supportive of the government's efforts to remove drugs from the streets, I still believe a minimum of credible evidence giving rise to guilt beyond a reasonable doubt is necessary. And because the evidence used to convict Andrews was neither credible nor sufficient to establish guilt beyond a reasonable doubt, I dissent from the majority's summary finding that his motion for acquittal was properly denied.

---

**14.** The government testimony was questionable in other respects. Although Lieutenant Bradley testified that Wright told him Andrews' nickname was Jitt, Record, Vol. III at 195, Wright testified that neither Andrews nor Ford was nicknamed Jitt, *id.* at 69–70, and that he never told Lieutenant Bradley otherwise. *Id.* at 92. Wright also testified that he did not mention Carlton Smith's presence until the morning before trial, *id.* at 61, 64–65, which seems more than a bit strange given that Smith's voice appears more frequently on the tape than Ford's.

Finally, Wright testified that the opening remark about "Jitt" was made by Andrews, *id.* at 93, while Officer Grayer attributed the statement to Wright. *Id.* at 112.

**15.** I might accept a charge that I am nitpicking about Wright's memory if the transaction had not been recorded on tape and the tape undoubtedly played for Wright at least once or twice before his testimony.